UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 2: 07-39-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WILLIAM J. GALLION and | ) | **MEMORANDUM OPINION** |
| SHIRLEY A. CUNNINGHAM, JR., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of whether Richard L. Robbins ("Robbins") may testify during trial in a manner consistent with the matters outlined in his Expert Report. [Record No. 677]  More specifically, Robbins seeks to offer opinions on the following issues: (1) the responsibility to provide notice to the putative class members; (2) whether the class action was properly decertified by the Boone Circuit Court; (3) whether the Defendants could properly hold back settlement funds for future contingencies pursuant to the settlement agreement with AHP; (4) the propriety of attorneys' fees awarded in class actions or mass tort actions; and (5) whether *cy pres* distribution of settlement funds is an appropriate practice in class actions.  [*Id.*, p. 1]

After reviewing Robbins' Expert Report, his former testimony, and conducting a *Daubert* hearing, the Court concludes that Robbins is not qualified to testify to the opinions sought to be introduced by the Defendants.  Further, even if he were qualified, the opinions Robbins seeks to express are inadmissible for a variety of reasons.

-1-

## I.     Background

The Court has concluded as a matter of law that the Boone County settlement was an aggregate settlement involving 440 claimants represented by the Defendants and Melbourne Mills.  This was not a settlement of a class action and the jury has been previously instructed on this point.  Consistent with the Court's conclusion, Professor Howard Erichson ("Erichson") testified that the Boone County settlement involving 440 of the Defendants' clients constituted an aggregate settlement subject to the provisions of SCR 3.130-1.8(g), also known as the aggregate settlement rule.  More specifically, Erichson offered the following testimony regarding the Boone County settlement:[1]

> **Q.**  Professor Erichson, when we left, I had asked you based upon your review of various documents and information, we'll get into that specifically, did you formulate an opinion on how this case was settled?  And when I say "this case," I mean the case involving 440 clients.
>
> **A.**  You mean the Kentucky settlement in May 2001?
>
> **Q.**  Correct.
>
> **A.**  Yes, I did.
>
> **Q.**  And what is that opinion?
>
> **A.**  It was a settlement of the claims of 440 named claimants who are listed in the settlement agreement.
>
> **Q.**  Was it a class action settlement?
>
> **A.**  No.  There was a class action going on at the time.  Can I explain how –

*          *          *

---

[1]     These examples are not intended to be an exhaustive list of the opinions given on these issues.

-2-

**A.**   Let me explain what happened based on my review of the settlement agreement, the decertification order, and the other documents.  There was a class action that had been certified in Kentucky for the Fen-Phen claims.  So that's a class action, that's what I described before.  That's 13 named plaintiffs suing on behalf of themselves and on behalf of all others similarly situated, and the class definition, which was changed a bit over time, but it was basically the Fen-Phen claimants in Kentucky.

And then there was a nationwide settlement class action – that you may have heard about by this point.  So a whole bunch of people who would have been part of the Kentucky class became part of that nationwide settlement.  So they're now out of the picture in Kentucky.  What's left is a class action that's been certified in Kentucky state courts that's going forward, a number of Kentucky claimants.

That class action could have been settled as a class action settlement.  It would have been possible.  That's not what happened, but the lawyers could have negotiated a settlement of the class action.  If they had done that, then American Home Products would have offered some money to settle the class action, the parties would have brought that settlement to the Court, and if the Court approved it – and when I say "the Court," I mean the Kentucky court that was overseeing the Kentucky class action.  If the Court approved it, that would have been a binding class action settlement unless it was overturned on appeal or something.

But that's not the settlement agreement that I saw.  The settlement agreement that was dated on, I believe, May 1st, 2001, that's not a class action settlement, that's a settlement of 440 claimants' claims.  And part of the settlement was we're going to settle these 440 claims, and, by the way, you're going to decertify that class action, we don't want to see that class action.  And anyway, that's very different from settling the class action itself.

[Erichson Direct Exam (Mar. 16, 2009–morning), pp. 54–56]

**Q.**   Now, Professor Erichson, again, is that paragraph consistent with the terms set out in the Settlement Letter as to this being an aggregate settlement?

**A.**   Yes.  It's more than consistent, it's explicit.  What this paragraph says is that the parties negotiated a settlement of these 431 claimants who are, you know, listed on the – on the exhibit to the agreement who are the Settling Claimants.

And they did not settle the entire class action, they were not settling the claims of the other members of the class.  They were just settling the claims of this particular group, of what at that point was 431 and was then 440.

[Erichson Direct Exam (Mar. 16, 2009–afternoon), pp. 3–4]

Defendants Gallion and Cunningham also made admissions in their disbarment proceedings conceding that they did not comply with SCR 3.130-1.8(g), which is Kentucky's aggregate settlement rule. As Erichson explained, this rule only applies to aggregate settlements, not class action settlements:

> **Q.** Now, in that same paragraph, we see that 1.8(g) that you have been discussing in length previously. Do you see that?
>
> **A.** I do.
>
> **Q.** And does 1.8(g) apply in a class action settlement?
>
> **A.** No. The whole point of the aggregate settlement rule is when you ask for each client's consent to the settlement and when you ask them to give their release, you need to disclose the full terms of the deal. As I said, a class action is different. If the Court approves the class action settlement, then it's binding on the whole defined class. You're not asking for each person's individual consent, you're not asking for each person's individual release, and so – and so there have been courts that have said in class actions, it's not the duty under 1.8(g), instead it's the Court's responsibility to make sure the settlement is fair to everybody.

[Erichson Direct Exam (Mar. 16, 2009–morning), pp. 67–68]

Following temporary suspension proceedings before the Supreme Court of Kentucky, on September 2, 2008, Defendants Gallion and Cunningham filed motions to withdraw their memberships to practice law in Kentucky under terms of permanent disbarment. Through their motions, both Defendants admitted that their conduct "violated certain Rules of the Kentucky Supreme Court as charged by the Inquiry Commission in case number 9339 . . . and case number 12938 . . ." [United States Exhibit Nos. 132 and 133] More specifically, each Defendant admitted that he:

1.      did not tell his clients in writing that he had made fee arrangements with other attorneys;

2.      did not advise his clients concerning the mediation of their case, or provide them an opportunity to be present at the mediation or present input as to the value of their specific case;

3.      did not advise his clients of the total settlement amount and *did not comply with the requirements of SCR 3.130-1.8(g)*;

4.      did not advise his clients that he was seeking fees that were more than the contingent fees provided in his contingent fee contracts;

5.      did not comply with the requirements of SCR 3.130-1.15 to "hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property . . . in a separate account maintained in the state where the lawyer's office is situated . . ."

6.      did not disclose to the clients that he intended to request that the Judge consider placing approximately $20,000,000.00 of the settlement funds into the Kentucky Fund for Healthy Living, Inc., or obtain their consent to that distribution;

7.      participated as a paid director of that Fund without client consent; and

8.      did not disclose to his clients that their individual settlement amounts were being determined by a settlement protocol developed and administered by their own lawyers, not by the Defendant.

[*Id.*] (emphasis added).

On October 23, 2008, all Justices of the of the Supreme Court of Kentucky concurred that Defendants Gallion and Cunningham should be permanently disbarred from practicing law in the Commonwealth.  Based on the information submitted, the Court found that the Defendants had entered contingency fee contracts with their clients in the Fen-Phen diet drug litigation. Further, the Boone County settlement resulted in "one lump sum payment to be divided among all plaintiffs." [United States Exhibit Nos. 189 and 190] According to the court:

> A staff member working with [Gallion, Mills or Cunningham] contacted each of the plaintiffs and informed them how much settlement money he would receive. The plaintiffs were never informed that their lawyers actually determined the amount of money they were to be given. . . .  At no point were the plaintiffs told about the total settlement process, the manner in which their settlement amounts were decided upon, or their right to opt out of the settlement and proceed to trial.

[*Id.*]

As noted previously, the Court has concluded that this was an aggregate settlement, not a settlement of a class action. However, as will be discussed below, Robbins' proposed and former testimony includes opinions that the Boone County settlement was a class action settlement. Unlike differing opinions on fact issues which require jury resolution, issues of law are resolved by the Court. *See Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657 (1935) ("issues of law are to be resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court"). For this reason, expert testimony on issues of law is typically excluded. However, the Court believes that in narrow circumstances, where expert testimony would assist in explaining legal concepts, and where such opinions are not inconsistent with the instructions to be given by the Court, limited expert opinion testimony is permissible. Here, because the Defendants' attorneys have consistently attempted to confuse legal concepts and have made arguments contrary to the Court's instructions, limited opinion testimony has been allowed on a narrow range of issues. The Court believes that, under the circumstances of this case, such testimony is necessary to avoid confusion of factual issues to be presented for resolution by the jury.

Since the nature of the Boone County settlement is not a fact issue for the jury's determination, the Defendants are not entitled to offer testimony that contradicts the Court's

holding.  Therefore, any conclusions by Robbins that the Boone County settlement was anything other than an aggregate settlement of 440 claimants subject to SCR 3.130-1.8(g) is an incorrect statement of the law and is inadmissible.  In addition, the Kentucky Supreme Court's opinion includes numerous legal conclusions regarding the Defendants' ethical violations.  Further, the undersigned agrees with these legal conclusions.  Any opinions offered by Robbins that contradict these conclusions are inadmissible.

## II.      Standard of Review

The admission of expert opinion testimony is governed by Rule 702 of the Federal Rules of Evidence ("Rule 702").  Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.  The rule reflects the Supreme Court's opinions in *Daubert*[2] and *Kumho Tire*.[3] *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008) (noting that "[i]n *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based on science").

---

[2]      *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[3]      *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

As the Sixth Circuit explained in *In re Scrap Metal*, a proposed expert's opinion testimony is admissible, at the district court's discretion, if three requirements are met: (1) the witness must be qualified by "knowledge, skill, experience, training, or education;" (2) the testimony must be relevant – *i.e.*, it "will assist the trier of fact to understand the evidence or to determine a fact in issue;" and (3) the testimony must be reliable. *In re Scrap Metal*, 527 F.3d at 529 (citing FED. R. EVID. 702). Finally, the proponent of the opinion testimony must establish by a preponderance of evidence that the opinions are admissible pursuant to Rule 702. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

### III.   Qualifying as an Expert

Robbins has approximately 28 years of experience involving complex business litigation, including experience as lead counsel in both class action and non-class action suits. [Record No. 677, pp. 1–2] He began working on class actions in 1981 and has represented dozens of defendants in class actions since that time. [Record No. 540, p. 26] Before starting his own firm in 2008, Robbins was a partner and co-chair of the Complex Business Litigation team at Sutherland Asbill & Brennan L.L.P. in Atlanta, Georgia. [Record No. 677, pp. 1–2]

Despite working as an attorney for nearly three decades, the Court has concerns about qualifying Robbins, or any witness, as an expert on an area of the law solely on the basis of work

experience in a particular area.[4]  This concern is well-explained in *Cicero v. Borg-Warner Auto., Inc.*, 163 F. Supp. 2d 743 (E.D. Mich. 2001), which noted that:

> Plaintiff's counsel also proffer the resume, affidavit, and in-court testimony of Donald Gasiorek as an expert in employment discrimination law. . . .  First, the court notes that Mr. Gasiorek is a member of the employment-related committees of various local bar associations.  While membership in these groups certainly implies an interest in this area of law, it does not necessarily connote expertise, as any attorney can select himself to be a member of these organizations.

> Second, though Mr. Gasiorek is apparently listed in a publication called Woodward & White's Best Lawyers in America, there is no evidence demonstrating who the publication's decision-makers are, their qualifications, or what criteria are used.

> Third, and most perplexing (but by no means the fault of Mr. Gasiorek or plaintiff's counsel), is the extent to which the court should give weight to "experience" as a criterion for qualifying an attorney as an expert in a particular area of law.  Mr. Gasiorek avers that he has practiced in employment law since 1981, and that he currently practices almost exclusively in that area.  He also avers that he frequently represents both plaintiffs and defendants in employment discrimination cases.  The court is not at all sure that time in service leads to expertise.

> One would hope that attorneys who practice in a particular area of law for many years would develop an expertise in that area, however, courts do sometimes encounter attorneys who have been practicing law not very well but for a great length of time.  By noting this unfortunate reality, the court in no way suggests that Mr. Gasiorek is such an attorney, but only notes the limits of relying upon an attorney's time in practice as an indicator of expertise.  Though plaintiff's counsel and Mr. Gasiorek were not presented with this question at the hearing, the court

---

[4]    An attorney can be qualified as an expert to provide opinion testimony on attorneys' fee issues.  *See, e.g., Duininck Bros. v. Howe Precast, Inc.*, 2008 U.S. Dist. LEXIS, 71512, *7 (E.D. Tex. Sept. 22, 2008); *Sniffen v. Spectrum Indus. Servs.*, 2007 U.S. Dist. LEXIS 55013, *9 (S.D. Ohio July 30, 2007).  Here, while attorneys' fees are involved, the jury is not being asked to determine the amount of fees the Defendants are entitled to receive from their 440 clients.  Rather, the jury is asked to determine whether the Defendants intended to defraud their 440 clients by taking fees in excess of what was agreed upon in the contingency fee agreements.

is of the view that something more than time in practice would be required to qualify an attorney as an expert in a given specialty.[5]

*Id.* at 748–49, n.7.

The Court finds *Cicero* to be very well-reasoned and particularly relevant. Although Robbins appears to have practical experience in areas of complex and class action litigation, this does not mean that he is qualified to testify as an expert with respect to the areas designated by the Defendants. Neither his report nor his former testimony indicate whether he has ever written or spoken professionally on any of the issues on which he seeks to offer opinions. While the presence of these factors is not a requirement to be qualified as an expert witness, their absence is particularly meaningful in the present case where the sole basis for Robbins' expertise is his practical experience. Without these or other differentiating factors, there is nothing to set Robbins apart from any other lawyer with experience as an advocate in a particular area of law. Surely, not every lawyer with such experience qualifies as an expert in his or her practice area.

Finally, while Robbins was permitted to give opinion testimony in the first trial, that determination is not binding in this trial. In addition, the fact that Robbins identifies himself as "a class action expert" does not necessarily make him an expert. [Record No. 540, p. 29] Based on the information provided by the Defendants, Robbins does not meet the requirements in Rule 702 to testify as an expert in the areas he seeks to provide opinions testimony.

### IV.    Reliability Requirement for Expert Testimony

In addition to the requirements that the witness qualifies as an expert and that the opinions he wishes to express are relevant, Rule 702 requires that the opinions be reliable. *In*

---

[5]    This last paragraph was a footnote to the previous paragraph.

*re Scrap Metal*, 527 F.3d at 529.  When assessing the reliability of opinions a witness seeks to provide as expert testimony, "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142.

Generally, opinions meet the reliability threshold when "an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice in the relevant field." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (citing *Kumho Tire*, 526 U.S. at 152).  However, this case is somewhat unusual in that Robbins is an attorney seeking to give opinion testimony on several areas of law.  As noted by the District of Hawaii, there does not seem to be any case that articulates a complete set of factors specific to attorneys giving opinion testimony on the law, but different courts have relied on a variety of measures to assess the reliability of such testimony.  *McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1291 (D. Haw. 2007).  *McDevitt* identifies the following non-exhaustive list of factors used by district courts around the nation:

> (1) whether the expert identified the materials relied upon and personally examined the file underlying the case; (2) whether the expert sufficiently explained why he or she reached an opinion; (3) whether the expert cited other sources relied upon by attorneys such as applicable statutes, treatises, or publications by professional organizations; or (4) whether the expert demonstrated that his opinion is accepted by his peers.

*Id.* at 1291–92 (internal citations omitted).

In both his Expert Report and his former testimony, Robbins identifies the materials he relied upon in forming his opinions.  [Record No. 540, pp. 40–41; No. 677, pp. 3–4]  He also testified that he reviewed several sources including Kentucky rules of ethics, Kentucky class

-11-

action rules and Kentucky class action law before forming his opinions. [*Id.*, p. 40] However, Robbins does not adequately explain how he reached his opinions based on the materials he reviewed. As discussed below, several of the opinions contained in Robbins' Expert Report and in his former testimony are incorrect statements of law. In addition, as previously noted, there is no information suggesting that Robbins' opinions regarding the areas of law on which he seeks to express opinions have ever been analyzed or critiqued via peer review. In summary, the Court holds that the reliability of Robbins' opinions have not been established by a preponderance of evidence and his opinions do not meet the admissibility requirements of Rule 702.

## V.      Robbins' Specific Opinions

Robbins is not qualified to provide expert opinion testimony on any of the five issues identified by the Defendants. However, even if he were qualified to testify under Rule 702, the opinions he wishes to express are inadmissible. After a thorough review of Robbins' Expert Report[6] and his testimony given during the first trial [Record Nos. 519, 540–41, 677], the Court has identified numerous instances of inadmissible opinion testimony. These examples are divided below into categories based on the reason for their inadmissibility; however, some examples could fit into multiple categories. The examples provided are not intended to be an exhaustive list.[7]

---

[6]      The Defendants jointly designated Robbins as their expert witness in this trial. [Record No. 677] However, Robbins was initially retained by Gallion only. Thus, his expert witness report, which was filed for the first trial and then re-filed as Exhibit A to Record No. 677, was written with Gallion in mind.

[7]      Only a few examples are taken from Robbins' former testimony because the transcript of the former testimony is over 400 pages and spans approximately two and a half days of trial. Since the questions and answers often span numerous pages of the trial transcript, most examples will be taken from the expert witness report which is much more conducive for selecting short examples.

### A.       Opinions Which Are Inadmissible On Relevancy Grounds

As with all evidence, the threshold issue for admissibility of expert testimony is relevance.  *See* FED. R. EVID. 401 and 402.  Expert testimony is relevant under Rule 702 and *Daubert* if it will assist the trier of fact to better understand the evidence or to decide a material fact in issue.  *See In re Scrap Metal*, 527 F.3d at 529 (citing FED. R. EVID. 702).  Robbins' irrelevant opinions can be generally grouped into the following categories: (1) opinions related to class action settlements; (2) opinions related to notice requirements; (3) personal anecdotes; (4) opinions challenging the decision to prosecute the case criminally; and (5) comparisons between the settlement amounts received by the Defendants' clients and the amounts received by claimants who did not opt out of the national class action.

### (1)       Opinions Related to Class Action Settlements

As previously stated, the Boone County settlement was not a settlement of a class action but an aggregate settlement involving 440 claimants subject to the provisions of SCR 3.130-1.8(g).  Although the Settlement Agreement required decertification of the class previously certified, the settlement amount was intended to settle the claims of the Defendants' and Melbourne Mills' 440 clients.  The settlement amount was not intended to settle the claims of all claimants who were class members prior to decertification.

Much of Robbins' Expert Report and former testimony is based on the conclusion that the Boone County settlement was the settlement of a class action. Since this is incorrect as a matter of law, opinion testimony related to the settlement of class actions is inadmissible on relevancy grounds.  Because the opinion that the Boone County settlement was a class action

-13-

settlement is pervasive throughout Robbins' proffered and former testimony, it is difficult to pick out short examples of inadmissible opinions.  However, any opinions related to how class actions are settled, the use of a *cy pres* trust,[8] clients' rights after they have received their distribution

_____

[8]     As Erichson explained in his expert testimony, *cy pres* trusts are used in class action settlements, but not in aggregate settlements:

> **A.**  In a class action, if you have 13 plaintiffs, let's say, representing the class of all Kentucky Fen-Phen claimants, we don't know exactly how many Kentucky Fen-Phen claimants are in that class.  We don't necessarily know exactly what all of their claims are like.  They're just the defined class.
>
> So if the lawyers settle that class action, they might get a settlement of a couple hundred million dollars.  And there could be a matrix of settlement values so that claimants with certain types of claims and certain other information would get certain amounts.  But there's some estimating going on in doing that settlement.
>
> So then if the class-action settlement gets approved and people start submitting claims, it might be that there is excess money.  And in fact, if you are smart and you do a class-action settlement, you need to make sure that the money doesn't run out before all the class members have gotten paid.  So there very well may be excess funds.
>
> Usually, you can then take those funds and distribute them to the class members.  But settlements do vary.  Sometimes those extra funds will revert to the defendants; in other words, the defendant just doesn't pay that part of it.
>
> Or there could be what are know as cy pres remedies. That is where some other remedy other than giving the money to the claimants is created as a way to deal with that excess money, because there's some estimating going on when you do a class settlement.
>
> **Q.**  In an aggregate settlement, would there be any money for a cy pres trust?
>
> **A.**  No. . . . in a settlement where you know exactly who the claimants are and how much money each of them is getting, then if the question is, "What do we do with the money?" the answer is, "Give it to the claimants.  It's theirs.  It settled their claims.
>
> And so whatever money there is, other than what the lawyers are entitled to pursuant to their fee agreement and reasonable expense, the money belongs to the clients and goes to them.

[Erichson Direct Exam, (Mar. 16, 2009–afternoon), pp. 16–18]

-14-

from a class action settlement, *etc.*, are all irrelevant items of opinion testimony. *See, e.g.*, Record No. 540, pp. 96–118.

### (2)     Opinions Regarding Notice Requirements

Because this was an aggregate settlement involving 440 individual claimants, the Defendants were obligated to comply with Kentucky's aggregate settlement rule, which explicitly states that "[a] lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients . . . unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement." KY. SCR 3.130-1.8(g). Opinions, such as the example below, which state that the Defendants were not required to give the clients such notice are incorrect statements of the law and are inadmissible.

**A.**  In my opinion, it would have been extremely risky for these lawyers to disclose the entire settlement amount to these claimants.  And in my opinion, I think it has little, if no relevance to the claimants.  And I can explain both points.

**Q.**  Explain that.

**A.**  First, it would have been dangerous.  You cannot tell 440 people, we settled for $200 million, but don't tell anybody.  Hey, that's just not going to happen. They're going to tell family members.  It would take an hour, two hours, three hours, before it'd be all over the State of Kentucky and elsewhere.  You can't do that.  It's hard enough to keep a settlement confidential when you only have two people to a settlement.  With 400 people and their family members, I don't think so.  And, as I said, they're looking at [a] very serious penalty for the breach of confidentiality.

The second thing, which is why I'm saying I don't think it's relevant, in my experience, claimants in a class or a class type of action are interested in how much they're going to get.  Whether you settled for $100 million or $100 billion, it doesn't make any difference.  What do I get?  The overall settlement, the nationwide, I believe was $3.47 billion.  What did that figure mean to an

individual claimant?  Absolutely nothing.  It didn't mean they were going to get
. . . $500 . . . or $5 million.  What difference does it make, what the overall
settlement is, what is important is, what am I going to get?  This is not an
easy—there is no easy answer to this.  It's easy for me to come after the fact and
offer my opinions or other people to offer their opinions, but these lawyers were
sitting there faced with a very, very difficult problem. . . . But in my opinion, it
would have been at least too dangerous [sic] for my taste to disclose the overall
amount of the settlement, particularly when I'm not sure it makes any difference
to a particular claimant.

[Record No. 540, pp. 110–12]  Robbins' misunderstanding of Kentucky's Aggregate Settlement

Rule demonstrates his fundamental lack of understanding and "expertise" in the areas in which

he seeks to provide opinions.  This rule is not unique to Kentucky.  Both Georgia and Florida,

the states in which Robbins is admitted to practice, have substantially similar provisions.  *See*

GA. R. & REGS. ST. BAR R. 1.8; FLA. BAR REG. R. 4-1.8.  One would assume that an attorney

qualified to give expert opinion testimony on aggregate settlements would understand the

requirements imposed by this rule.[9]

In addition to the notice requirement contained in the aggregate settlement rule, Robbins

seeks to express opinions on whether the Defendants were required to give notice to their clients

---

[9]    Erichson correctly opined that the basic notice requirements in the Aggregate Settlement Rule are
clear.

**Q.** Okay.  Now, Professor Erichson, now you said you've got to tell them the deal.  Would
you tell them the total amount that all people in total were going to be receiving?

**A.** Absolutely.  So if the question is what disclosure is necessary, I said that the aggregate
settlement rule requires disclosure, requires that the lawyer disclose to the clients what the
deal looks like.  Some things are clear about disclosures, some things are not so clear.  There
are some questions about how to apply this rule. . . .  But the basic idea is straightforward.
The basic idea of the aggregate settlement rule is you have to say to the client this settlement
is part of an aggregate settlement, here's what the total amount is, here's the total number
of people involved, here is the allocation, here is how we go there, here's how much you
would get.

[Erichson Direct Exam  (Mar. 16, 2009–morning), pp. 40–42]

upon decertification of the class.  Kentucky law specifically states that "a class action *shall not* be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."  Ky. CR. 23.05 (emphasis added).  Despite this clear notice requirement, Robbins provides several opinions regarding why it was unnecessary for the Defendants to provide notice to their clients prior to dismissal of the action.  These opinions that notice was unnecessary are incorrect statements of the law and, therefore, opinions like the example below are inadmissible.

> **Q.**  In terms of timing of notice, what are the considerations that would apply to timing when you've got class actions that are – the certification is under attack.
>
> **A.** . . . . Decertification.  If a motion to decertify a class is pending, typically you won't have a notice sent out pending decertification, because if a judge decertifies the class, then you don't have any notice requirements in the class action.  It's no longer a class action.  So all of those issues could weigh in to the timing of the notice.  You also have the final issue on whether notice is required, because, as I said, this was certified under (b)(1), (b)(2), and (b)(3).  Only a (b)(3) class requires notice; (b)(1) and (b)(2) do not require notice.

[Record No 540, pp. 69–70]

### (3)    Personal Anecdotes

Robbins' proffered testimony contains several personal anecdotes.  Since the circumstances behind a judge's ruling are different in every case, and because there is no indication that the cases in Robbins' anecdotes were governed by Kentucky law, the Court finds the following to be irrelevant and inadmissible:

> For example, I have recently been involved in two shareholder derivative actions, which technically require various court approvals.  Counsel, with consent of the judges in those cases, have handled the approval process, including notices to shareholders who were not named plaintiffs, according to procedures not

-17-

technically set out in the court rules but which we all agreed were appropriate under the particular circumstances of the cases.

[Robbins Ex. Rep., ¶ 2]

I have been involved in cases where classes were "certified" under class action provisions which required no notice to class members, because counsel believed it appropriate under the circumstances or because notice would have required unnecessary expense and time delay. I have also seen class actions decertified, when appropriate, so that individual settlements would be made, so long as there was a determination that the rights of the "decertified" class members were not prejudice[d].

[Robbins Ex. Rep., ¶ 14]

It is a typical process in complex cases such as the *Moore* case for a trial court to retain jurisdiction to handle such matters as enforcement of settlement, and approval of distribution and attorneys' fees. In fact, I recently negotiated a consent judgment in a California lawsuit in which the federal court agreed to retain jurisdiction for purposes of enforcing the settlement, including the potential award of attorneys' fees. The order was entered by the trial court without charge.

[Robbins Ex. Rep., ¶ 22]

### (4)    Opinions Challenging the Decision to Prosecute

This is a criminal matter. Opinions, like the examples listed below, that challenge the

U.S. Attorney's decision to seek an indictment in this matter are irrelevant.

While the plaintiffs here may well have had a legitimate dispute with Mr. Gallion and the other lawyers regarding the amount of fees they retained, in my opinion that is a civil matter that should be, and my understand was, handled in a civil setting.

[Robbins Ex. Rep., ¶ 18]

While the government contends that Plaintiff counsel could have and should have disclosed better the amount reserved [sic], and the reason for the reserve, this in my opinion may well reflect a lack of sophistication by Plaintiff counsel in document settlements of this complexity and in any event should be treated as a contractual matter.

[Robbins Ex. Rep., ¶ 20]

### (5)      Settlement Amount Comparisons

Comparisons between the settlement amounts received by the Defendants' clients and the amount received by those who did not opt out of the national settlement are irrelevant.  The fact that the Defendants' clients may have received more or less compensation than similarly-situated claimants in the national settlement has no bearing on whether the Defendants intended to defraud their clients out of the amounts they were entitled to receive from the Boone County settlement.

> Based on my experience and my understanding of the law, there is nothing improper here in making a cy pres distribution to a foundation.  While the amount distributed here was substantial, the amounts distributed to the various plaintiffs were also substantial, and were reportedly consistent with amounts received by similarly-situated plaintiffs in the national class action.

[Robbins Ex. Rep., ¶ 17]

> It is my understanding that the initial distributions to the claimants were substantially more than what they would have received in the national class action had they chosen to participate in that class action and not opt out.

[Robbins Ex. Rep., ¶ 20]

### B.      Opinion Testimony Inadmissible Under Rule 403

As with all evidence, relevant expert testimony may be excluded pursuant to Rule 403 of the Federal Rule of Evidence ("Rule 403") if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  FED. R. EVID. 403; *United States v. Geiger*, No. 08-0764.n06, 2008 U.S. App. LEXIS 25680, *6

(6th Cir. Dec. 17, 2008) (unpublished).  The need for a thorough Rule 403 analysis of expert testimony is particularly important, because as the Supreme Court recognized in *Daubert,* "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than lay witnesses."  *Daubert*, 509 U.S. at 595 (citation omitted).  The risk recognized by the Supreme Court is exacerbated where, as here, the proposed expert seeks to express legal opinions which invade the province of the Court.

Robbins' opinions regarding the Defendants' alleged good faith reliance on Judge Bamberger's orders are inadmissible under Rule 403, because they there are misleading.  Judge Bamberger's testimony established that he did not receive full disclosure from the Defendants, and that he would have acted differently if full disclosure had been provided.[10]  Since there is

---

[10]     **A.**  Mr. Gallion said, "We have excess money that we're looking to the Court for some guidance on how to handle it."  And I said, "How much?"  And he said, "20 million."  And I said, "Do the claimant's know it?"  And he said, "Yes."  And I said, "What do they think?" He said, "They're thrilled, they think it's great."

**Q.**  Did you have any idea, at that time that these claimants hadn't been told anything about the $20 million being placed in a trust?

**A.**  Quite to the contrary.

**Q.**  Would it be a factor in your consideration regarding authorizing such a trust that the clients approved this creation?

**A.**  Yes.

[Judge Bamberger Direct Exam, pp. 12–13]

**Q**.  Was it stated [in you letter to the Judicial Conduct Commission] that "Judge Bamberger acted with complete integrity and good faith but readily concedes that if he had known everything then that he knows now, he would have managed the case and its settlement much

ample evidence that the Defendants did not fulfill their duty to act with candor to the court, their

reliance on Judge Bamberger's orders cannot be said to be indicative of good faith.  Therefore,

opinions, such as the examples below, which give the mis-impression that the Defendants were

entitled to rely on Judge Bamberger's orders, are inadmissible.

> It is my opinion that plaintiff's counsel cannot be faulted, and certainly cannot be
> held to have a wrongful intent, if they did not send out notices.  To the contrary,
> it may well have violated the law if plaintiffs' counsel were to send out notices
> that had not been first submitted and approved by the trial court.  It was up to the
> trial court to direct class notices.

[Robbins Ex. Rep., ¶ 9]

---

differently?"

**A.**  That's correct.

**Q.**  "He agrees that approving attorneys' fees in excess of the rates contracted for in the contingency fee agreement was a serious mistake?"

**A.**  Well, it was a mistake in terms I didn't know they had contracts, so I had gone through – had I known they had contracts, I would have been going through a different mental exercise.

**Q.**  Did you state in this response: "He would have never approved the fees he did if he had been made aware that contingency fee contracts existed that specified a lower rate?"

**A.**  I would either not have done it or had a hearing if they passed some threshold of – you know, had a legitimate argument that they should get more than their contract provided.

**Q.**  Did you state: "Ultimately, he was informed that the 431 known claimants, former class members, had signed releases and acknowledged complete satisfaction with their recoveries.  The Judge did not question or investigate those representations but accepted them.  Had Judge Bamberger known when these events occurred that any plaintiff would eventually express dissatisfaction with the settlements or claim, actionable misconduct by their attorneys, the Judge would have managed the settlement very differently?"

**A.**  That's correct.

[Judge Bamberger Re-Direct, pp. 65–66]

[I]t is my strong opinion that the attorneys in the case, both plaintiff and defense counsel, were not only justified in relying on the court orders in handling proceedings, but indeed were required by law to comply with the court orders.

[Robbins Ex. Rep, ¶ 12]

Under the settlement terms, including the "Side Letter," the attorneys had personal indemnification obligations to the defendants for future claims and for defendant's future attorneys' fees.  I do not read either the original settlement or the Side Letter as limiting the amount of the indemnification.  It is extraordinary for attorneys to assume such personal liability, and it would be understandable if the attorneys believed it necessary to hold back a certain portion of settlement funds until it was clear that the indemnification obligations had been resolved. Moreover, my understanding is that the trial court approved of the fee percentage [sic], which again renders it appropriate for the Plaintiff counsel to rely on such approval.

[Robbins Ex. Rep., ¶ 19]

**Q.** Did these attorneys violate any ethical or legal rules as regard the manner in which the cy pres fund issue was handled with Judge Bamberger?

**A.** No, sir.  They presented their recommendation.  It was $20 million, as I said. They could have made the argument that that $20 million belonged to them, shouldn't be given to anyone.  The judge got a legal opinion.  So it's not just these lawyers making a recommendation.  It's the judge getting independent legal advice and whether this was appropriate.

[Record No. 519, p. 53]

### C.    Opinion Testimony Inadmissible Under Rule 704(b)

Despite the requirements that expert testimony be relevant and reliable, these factors alone do not necessitate admitting such testimony.  The testimony must also be admissible under other pertinent evidentiary rules, such as  Rule 704(b) of the Federal Rules of Evidence, which provides that:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the

defendants did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

FED. R. EVID. 704(b). Under this rule, opinions that draw the ultimate conclusion regarding whether a defendant had the requisite intent to commit the crime charged are inadmissible, but opinions from which the jury can infer intent are admissible.[11] In addition, the Sixth Circuit has held that Rule 704(b) does not prohibit a law enforcement officer's opinion testimony regarding whether a defendant's *conduct* is indicative of intent. *See United States v. Combs*, 369 F.3d 925 (6th Cir. 2004). In *Combs*, the Sixth Circuit explained that:

> After reviewing Officer Smoot's testimony in its entirety, we conclude that he did not actually testify regarding the intent of the defendant to distribute drugs. Rather, he testified regarding conduct that would be consistent with an intent to distribute and left to the jury the final conclusion regarding whether Combs actually possessed the requisite intent. The trial court, therefore, did not err in permitting this testimony.

*Id.* at 940. However, the Court also notes that at least one district court has held that opinion testimony is inadmissible under Rule 704(b) if the term "fraud" is used to describe the defendant's conduct.

In *United States v. Cooper*, the government's experts were expected to testify that the defendant's activities constituted "fraud." 286 F.Supp.2d 1283, 1292–93 (D. Kan. 2003). The

---

[11]     *Compare United States v. Bennett*, 161 F.3d 171, 183 (3d Cir. 1998) (noting that opinion testimony is admissible if it merely supports an inference or conclusion that the defendant did or did not have the requisite intent as long the expert does not draw the ultimate inference or conclusion for the jury) and *United States v. Cox*, 826 F.2d 1518 (6th Cir. 1987) (noting that it is appropriate under Rule 704(b) for expert witnesses to "supply the fact finder with data from which it could draw the ultimate legal conclusion" about the defendants' intent) *with United States v. Sterling*, 504 F.3d 672, 679 (7th Cir. 2007) (noting that the defendant's intent to defraud "is not an appropriate subject for expert testimony") and 28 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 6285, at 395 (1997) ("Rule 704(b) usually bars only a direct statement that defendant did or did not have the required mental state.").

defendant filed a motion to preclude the government from offering such opinion testimony on the grounds that Rule 704(b) prohibits an expert witness from giving an opinion "that certain activities constitute 'fraud' when an element to these crimes is that the defendant intended to defraud." *Id.* at 1293.  In granting the defendant's motion, the court explained that:

> The term, "fraud," is a legally specialized term which tracks the statutory and common-law language of the intent elements of the offenses with which the defendants are charged.  When an expert witness opines that a defendant's activity is fraudulent, the witness expressly draws the conclusion or inference that the defendant acted with the intent to defraud.  Such testimony does not merely provide the facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state.  Rather, if believed, this testimony would necessarily dictate the conclusion that the defendant acted with the intent to defraud. . . .  [T]his intrusion into the province of the jury is precisely the sort of testimony Rule 704(b) is designed to prevent.

*Id.* at 1295 (citing *United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000)) (internal quotations omitted).

The Court finds the analysis in *Cooper* is relevant here.  In addition, while other Circuits have reached the opposite conclusion regarding the use of terms like "fraud" to describe a defendant's conduct,[12] the undersigned finds the holding in *Cooper* to be more persuasive in light of the Sixth Circuit's opinion in *Torres v. County of Oakland*, 758 F.2d 147 (6th Cir. 1985).[13]

---

[12]    *See, e.g., United States v. Owen*, 301 F.3d 521, 527 (7th Cir. 2002) (opinion testimony that the defendant's appraisal report was "misleading and fraudulent" did not violate Rule 704(b)); *United States v. Aggarwal*, 17 F.3d 737, 743 (5th Cir. 1994) (opinion testimony using the terms "scam," "fraud," and "fraudulent" to describe a loan was not a direct comment on the defendant's state of mind, and therefore, this did not violate Rule 704(b)).

[13]    Although *Torres* involved the admission of lay opinion testimony pursuant to FED. R. EVID. 701, the Court finds that *Torres* is also applicable to expert opinion testimony pursuant to FED. R. EVID. 702.  *See Whitescaver v. Wal-Mart Stores, Inc.*, 1992 U.S. App. LEXIS 34841, *12 (6th Cir. Dec. 29, 1992) (unpublished) (discussing *Torres* in the context of expert witness testimony).

In *Torres*, the Sixth Circuit announced the test[14] that district courts should apply for determining whether an opinion on an ultimate issue should be excluded:

> The best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in law different from that present in the vernacular. If they do, exclusion is appropriate. Thus, when a witness was asked whether certain conduct was "unlawful," the trial court properly excluded the testimony since "terms that demand an understanding of the nature and scope of the criminal law" may be properly excluded.[15]

*Id.* at 151.

Turning to the present matter, neither Robbins nor any other expert witness may not give opinion testimony regarding the Defendants' intent or lack thereof. First, any direct opinion regarding whether the Defendants had the intent to defraud their clients would be inadmissible under Rule 704(b). Second, opinions regarding whether the Defendants' conduct is indicative of an intent to defraud are inadmissible, because Robbins is not qualified to give such

---

[14]    The *Torres* test relates to Rule 704(a), which generally permits opinions on ultimate issues so long as the opinion does not tell the jury what decision to reach. The Court finds that this test is also applicable to Rule 704(b), which focuses on a particular type of ultimate issue opinion—an opinion on a criminal defendant's intent.

[15]    *Torres* cites to the following examples of terms that have been found to be inadmissible under Rule 704. *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239–40 (5th Cir. 1983) (trial court properly excluded testimony on "cause" of the accident when there was no dispute as to the factual "cause" of the accident but only the legal "cause" of the accident); *Christiansen v. Nat. Savings & Trust Co.*, 683 F.2d 520, 529 (D.C. Cir. 1982) (inadmissibility of conclusion that the defendants held a "fiduciary" relationship to plaintiffs); *Strong v. E.I. DuPont de Nemours Co.*, 667 F.2d 682, 685–86 (8th Cir. 1981) (trial court properly excluded expert testimony that defendant's warnings were "inadequate" and that the product was therefore "unreasonably dangerous"); *Stoler v. Penn Cent. Transp. Co.*, 583 F.2d 896, 898–99 (6th Cir. 1978) (trial court properly excluded testimony that a railroad crossing was "extra hazardous," a legal term of art under governing law, since it "amounted to a legal opinion").

-25-

testimony.[1] Simply put, Robbins' experience as a litigation attorney does not qualify him to express opinions regarding the Defendants' state of mind.

Finally, even if Robbins were qualified to provide such opinion testimony, use of the terms "fraud," "fraudulent," "defraud," *etc*., would be excluded under Rule 704(a) pursuant to *Torres*, because intent to defraud is a necessary element in the crimes charged, and opinions using these terms go beyond merely suggesting the ultimate conclusion. *See DeMerrell*, 206 F. App'x 418, 426 (6th Cir. 2006); *Woods v. Lecureux*, 110 F.3d 1215, 1219–20 (6th Cir. 1997).

For these reasons, the following examples of proffered and former testimony are inadmissible:

> The decisions made on how to certify and decertify the class, how to provide notice, if any, to the potential plaintiffs, and how to handle the settlement and attorney's fee awards, were clearly innovative in the *Moore* case, but in my opinion do not show a violation of law, and [are] certainly not indicative of any intent to defraud or other wrongful motive.

[Robbins Ex. Rep., ¶ 3]

> The procedural decisions in the *Moore* case were undoubtedly complicated by the absence of clear Kentucky law. . . .  The sparsity of the case law meant that the judge in the *Moore* case, as well as the plaintiff and defense counsel, did not have clear judicial guidelines from the appellate courts in Kentucky on how to handle the particular case.  This in my opinion left the judge and the counsel with a wide degree of discretion in handling the numerous procedural issues involved.  In my opinion, it would be difficult, if not impossible, to establish that there was any intent to violate class action law in the *Moore* case, where the appellate guidance

---

[1]     *Combs* is materially distinguishable from this case.  The expert witness in *Combs* was a law enforcement officer. The Sixth Circuit has specifically held that law enforcement officers can give opinion testimony regarding a whether a defendant's conduct is indicative of intent, because law enforcement officers have specific knowledge beyond that of an average layman regarding the methods and techniques employed in an area of criminal activity.  *Combs*, 369 F.3d at 940 (citing *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990)).

on the proper handling of multi-plaintiff class action actions in Kentucky were so limited.

[Robbins Ex. Rep., ¶ 5]

"It is my opinion that plaintiff's counsel cannot be faulted, and certainly cannot be held to have a wrongful intent, if they did not send out notices. To the contrary, it may well have violated the law if plaintiffs' counsel were to send out notices that had not been first submitted and approved by the trial court. It was up to the trial court to direct class notices."

[Robbins Ex. Rep., ¶ 9]

I am not opining as to whether contractually it was appropriate to retain or hold back the amounts the attorneys did, but it is my opinion that it does not reflect an intent to defraud to hold back certain funds in light of the broad indemnification obligations for which the attorneys were <u>personally</u> responsible under the settlement agreements, especially [since] further distributions were made following court proceedings initiated by the Plaintiffs' counsel.

[Robbins Ex. Rep., ¶ 21]

Based on my review of the letters, the decision of Plaintiff counsel to reserve a certain amount of the overall settlement proceeds appears to be prudent, and does not reflect an intent to defraud.

[Robbins Ex. Rep., ¶ 22]

Decertification of the class here appeared reasonable and appropriate under the circumstances, especially where the trial court made it clear that other members of the putative class were not prejudiced. The interplay of the Kentucky in the national Fen-Phen proceedings was extremely complex, and required innovative techniques. That does not appear to me to reflect an intent to defraud or other wrongful motive by pursuing these creative techniques and procedures to handle the pursuit of the claims and administration of settlement in the manner handled by Plaintiff counsel and approved by the trial court.

[Robbins Ex. Rep., ¶ 22]

**Q.** You see, from what you've observed and based on what you've just said, [is there] anything sinister that would indicate any desire to commit fraud on the part of these attorneys?

-27-

**A.** I don't see anything sinister.  This was – this was a difficult case.  The plaintiffs here had claims, you know, best-case scenario – I keep saying that because, you know, you hit a home run – is 30 to 50 million dollars.  At the end of the day, I believe – I believe [the government's expert witness] calculated that these claimants got $74 million.  They got 50 percent more than the best-case scenario of their claims.  That is a heck of a recovery.  That's an extraordinary recovery.   And you could have juggled with this settlement, come out with a much different number in my opinion.

[Record No. 540, p. 112]

**Q.** But going back to the question of failing to reveal the gross amount of the settlement to the clients, you do not feel that that is any evidence of a fraudulent intent on these attorneys' parts?

**A.** Not in my opinion, given the dilemma that I was talking about.  I think, you know, they could have been second-guessed tremendously, had they revealed the settlement amount, it had gotten out.  They could have gotten sued by AHP for perhaps tens of millions of dollars for violation of the confidentiality agreement.  It was a very difficult decision to make.  And at the end of the day, what difference does it make to an individual claimant?

[Record No. 540, p. 113]

**Q.** Looking at the transcripts of the testimony in this case and your review of the record in this case, did you see anything that you would constitute a deliberate attempt by these attorneys to commit an illegal or improper act?

**A.** No.  What I see is a potential fee dispute.

[Record No. 519, p. 60]

### D.    Defendants' Are Not Entitled to Elicit Expert Opinions Based on Advice of Counsel.

To receive a jury instruction concerning the defense of "advice of counsel," evidence must be offered that the Defendants: (1) acted in good faith in seeking counsel's advice on the lawfulness of their conduct; (2) sought and obtained the advice of other attorneys in their role

-28-

as independent legal advisors; (3) made a full and complete disclosure to the attorney regarding all pertinent facts; and (4) acted in good faith and in accordance with the advice of the attorney. If the Defendants offer such evidence, it is for the jury to determine whether the attorneys providing the advice were independent legal advisors.  In making this determination, the jury must consider whether the person giving the advice promoted or were a part of the Defendants' alleged scheme.  Further, the jury must consider whether the legal advice that was given was free of any conflict of interest.  *See United States v. Lindo,* 18 F.3d 353, 356 (6th Cir. 1994); *Mortensen v. C.I.R.,* 440 F.3d 375 (6th Cir. 2006).

In addition to the fact that Robbins is not qualified to testify as an expert witness, his proffered and former testimony on this issue would be an improper attempt to give contrary instructions to the jury on advice of counsel.  For this reason, opinions like those listed below are inadmissible:

> Based on the materials I have reviewed, it is my opinion that the decision by Plaintiff counsel not to provide class action notice following certification of the class was reasonably made in good faith reliance on the advice of far more experienced class action counsel, and with sensitivity to the implications for claimants in the national class action which far outnumbered the potential class claimants.  Whether that decision was valid or not, it is my opinion that it does not reflect any intent to defraud or other wrongful motive to rely on the advice and counsel of more experienced class counsel.
>
> *              *              *
>
> Based on the materials made available to me, it is my opinion that plaintiff class reasonably relied heavily on the advice of more experienced class action counsel, and sought court approval of their procedures.  This does not reflect an intent to fraud [sic] or other wrongful motive in devising the particular procedures for the *Moore* case.

[Robbins Ex. Rep., ¶¶ 10, 13]

-29-

**Q.** All right. In terms of the conduct of this aspect of the case by Mr. Gallion, do you find that his conduct and handling of those matters at the mediation was reasonable under the ethical and class action rules?

**A.** I found that not only reasonable, but very smart. . . . [Gallion] enlisted Stanley Chesley who is one of the top plaintiffs class action lawyers in the country to advise him on how to proceed. That is darn good advice. Charged $20 million for it, but it was darn good advice. . . . But in my opinion, Mr. Gallion acted reasonably and prudently in dealing with an extremely, extremely complicated situation.

[Record No. 540, p. 50–51]

**Q.** [W]as it reasonable for them to rely upon the advice of someone like Stanley Chesley?

**A.** In my opinion, it was essential for them to rely on somebody like Mr. Chesley. . . . Mr. Chesley has done dozens, if not hundreds of mass tort class actions, mass tort quasi class actions, knows the legal and the practical aspects, and, had they asked me, I would have said they would be well advised to associate [with] somebody like Mr. Chesley or Mr. Chesley himself to get them through this thicket.

[Record No. 540, p. 92]

**Q.** When someone of the stature of Mr. Chesley makes these type of statements and representations to the Court, is it reasonable for Judge Bamberger to rely upon this?

**A.** . . . I think it's more than reasonable for a judge to accept the representations of one of the top plaintiffs class action lawyers in the country.

**Q.** All right. Well, not only Judge Bamberger, but what about these three lawyers sitting here?

**A.** I believe that's why they retained him, is to advise them on how to handle plaintiffs class action in the fen-phen case.

\*     \*     \*

**A.** . . . Mr. Chesley is involved in the nationwide class action. He knows the rules. He's advising the court here in Kentucky on what they can and cannot do.

-30-

I believe it is reasonable for everybody in the courtroom, including the lawyers here and Judge Bamberger, to rely on that.

[Record No. 540, p. 126]

## VI.  Conclusion

Robbins does not possess the necessary credentials to testify as an expert witness to the areas relevant to this trial.  However, even if Robbins possessed the necessary credentials to testify as an expert, the opinions he wishes to express are incorrect, inadmissible and/or irrelevant.  Accordingly, it is hereby

**ORDERED** that Richard L. Robbins is barred from testifying as an expert witness during trial.

This 30th day of March, 2009.



Signed By:

*Danny C. Reeves*

United States District Judge