UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 2: 07-39-S-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WILLIAM J. GALLION and | ) | **MEMORANDUM OPINION** |
| SHIRLEY A. CUNNINGHAM, JR., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants William Gallion and Shirley A. Cunningham, Jr., were found guilty of eight counts of wire fraud and one count of conspiracy to commit wire fraud. In a subsequent forfeiture proceeding, the jury found that, as a result of their crimes, the Defendants should forfeit $30,000,000.00 to the government. Subsequently, this Court granted the government's motion for preliminary order of forfeiture, along with the Defendants' motion for a stay of forfeiture proceedings as the forfeiture order applied to real property. [Record No. 855] The government has indicated that the forfeiture funds may be used to satisfy restitution obligations to victims of the Defendants' crimes. The legal representative of the victims, Angela Ford, now seeks to be appointed trustee for the management and disbursal of the restitution funds. [Record No. 875]

As an initial matter, it is necessary to clarify that the appointment of a trustee would only be applicable to restitution – not forfeiture – funds. As the United States has observed, "the two

-1-

concepts are not interchangeable," with forfeiture serving to deprive a defendant of the fruits of a crime, and restitution serving to compensate victims for losses suffered as a result of a crime. Because of this distinction, a defendant is not generally entitled to use forfeited funds to satisfy a restitution obligation. Forfeiture funds belong to the United States while restitution funds belong to victims, and a defendant may be obligated to pay both types of funds. *United States v. O'Connor*, 321 F. Supp.2d 722, 729 (E.D. Va. 2004). The decision whether to allow the use of forfeiture funds to satisfy a restitution obligation lies with the Attorney General of the United States. 21 U.S.C. § 853(i) ("[T]he Attorney General may ... restore forfeited property to victims."). The United States has indicated that the Attorney General may favor such satisfaction, but notwithstanding this ultimate decision, it is wholly the role of the government to identify and collect the forfeiture funds. Thus, the Court will consider Ford's motion as it applies to the amount of restitution outstanding after forfeiture funds and other credits might be applied to reduce the total amount of restitution.

Ford asserts her motion pursuant to the Crime Victims' Rights Act of 2004 ("CVRA"). Under the CVRA, a crime victim has the "right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). This right to restitution may be asserted by the victims, or a legal representative of the victims, as it is being asserted here. 18 U.S.C. § 3771(d)(1). Enforcement of the right is left to the district court, particularly where there are numerous victims. "In a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims the rights described in subsection (a), the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the

proceedings." 18 U.S.C. § 3771(d)(2). The only limitations placed on these procedures is that they are reasonable and that they not unduly complicate or prolong the proceedings. *Id*. This particular CVRA right, the right to restitution, and its enforcement where there are numerous victims, has been not been addressed directly by many federal courts.

In *In re W.R. Huff Asset Mgmt. Co., LLC*, 409 F.3d 555, 562-563 (2d Cir. 2005), two defendants were found guilty of various fraud charges, with the government alleging hundreds of millions of dollars in ill-gotten gains  The government entered into a settlement agreement with the defendants, in which the defendants consented to forfeiture of various assets to establish a victim compensation fund of $715 million. *Huff*, 409 F.3d at 558-59. Because there were potentially "tens of thousands of victims," the settlement agreement provided for a notification procedure that informed potential victims of a hearing on the issue. The government moved to enact this settlement agreement pursuant to subsections (d)(1) and (d)(2) of the CVRA – the same subsections at issue here regarding restitution and numerous victims. *Id*. at 559. The district court adopted the settlement agreement, and a group of victims challenged it on appeal. The Second Circuit found that, even though some victims may not recover the full amount that they lost, the district court was within the discretionary bounds set by the CVRA in accepting the settlement. The district court has "insight into the complexities of a pending litigation" and is in a better position to assess a "reasonable" procedure for effecting the rights of victims under the CVRA. *Id*. at 562-63.

*Huff* recognizes that district courts have a great deal of discretion in dealing with the assertion of restitution rights under the CVRA when there are numerous victims. Here, there are

421 victims with differing degrees of financial injury. Each victim received differing settlement amounts from the Defendant-attorneys. The victims' representative, Ford, proposes that she serve as a trustee for the restitution funds, and oversee the distribution to the victims. Because Ford has served as the victims' legal representative since August 16, 2007, she has a knowledge and experience of the case, in addition to a personal relationship with the victims. Ford has worked with the victims through two criminal trials in the case and currently serves as their attorney in related civil litigation. If the appointment of a trustee is indeed authorized under law, Ford would be the logical choice.

However, what would otherwise be a straightforward application of this Court's discretionary power under the CVRA to grant Ford's motion to be appointed trustee is clouded by the fact that restitution is also governed by another statute: the Mandatory Victims Restitution Act of 1996 ("MVRA"). Unlike the CVRA, the MVRA has specific and comprehensive instructions for courts regarding the restitution process. Under the MVRA, a court is required to order restitution as a part of sentencing when the defendants have committed fraudulent or deceitful offenses that have resulted in pecuniary loss to the victims. 18 U.S.C. §3663A(c)(1). At first glance, it appears that the MVRA and subsection (a)(6) of the CVRA provide for the same right and relief; however, they are both necessary but distinguishable statutes for providing restitution to crime victims.

Other federal courts have clarified the relationship between the MVRA and the CVRA as follows: "the CVRA provides the vehicle for a petitioner to assert her right to restitution, it does not create an independent obligation for a district court to order or a defendant to pay such

an award. Rather, the CVRA merely protects the right to receive restitution that is provided for elsewhere." *United States v. Atlantic States Cast Iron Pipe Co.*, 612 F. Supp.2d 453, 459 (D.N.J. 2009) (citing *In re Doe*, 264 F. App'x 260, 262 fn. 2 (4th Cir. 2007)). Applying that principle here, subsection (a)(6) of the CVRA protects the fraud victims' right to receive restitution as it is embodied in the MVRA. Therefore, although the CVRA gives the district court open-ended discretion in formulating restitution procedures, the MVRA fills in the open ends with much more specific provisions.

First, the MVRA prescribes the *method* by which a court should calculate restitution. This method begins with a presentence investigation report from the probation officer, which contains information on each of the victims, their losses, and their economic circumstances. 18 U.S.C. § 3664(a). Subsequent provisions address necessary court procedures, *see id.* at § 3664(d) (establishing both notification procedures to inform victims of sentencing and guidelines for the court's obtaining documentation and information regarding restitution); disputes over the restitution amount, *see id.* at § 3664(e) (establishing a preponderance of the evidence standard for resolving disputes over amount or type of restitution); factors to consider in determining the amount, *see id.* at § 3664(f), (j), (k) (establishing that amount is based on the full amount of each victim's loss, with reductions for any compensatory damage recoveries and specific considerations for insurance providers); and the payment schedule (establishing considerations regarding the defendants' financial circumstances in determining payment schedule and manner).

Throughout the MVRA, the burden of discovery regarding restitution issues is alternately on the probation officer, the attorney for the government, and the court, with the majority of the

burden being on the court. The only provision of the statute that contemplates the involvement of other parties in the restitution process allows the court to refer issues to "a magistrate judge or special master for proposed findings of fact." 18 U.S.C. § 3664(d)(6). Otherwise, the court is the authority in the proceedings, with the duty to "specify . . . the manner in which, and the schedule according to which, the restitution is to be paid," with the aid of the probation officer and the attorney for the Government. *Id.* at (f)(2), (d)(5). In any case, the provision regarding magistrate judges and special masters does not quite apply here because Ford clearly envisions a larger role for the trustee than simply making findings of fact.

Ford asserts that she is "uniquely qualified and positioned" to not only manage and disburse restitution funds, but also identify and liquidate assets that make-up those funds. Specifically, she cites her representation of the victims in the related civil litigation of this case, and her ability to "assist with the coordination of equitable and timely disbursements." As far as disbursement and distribution, the MVRA makes clear that the court is obligated to set a payment schedule pursuant to 18 U.S.C. § 3572, identifying each victim and the full amount of the victim's loss. *Id.* at (f)(1)(A). Thus, to the extent that Ford wishes to either determine the amount allocated to each victim, or actually distribute the funds to each victim, her request will be denied. Those duties are the province of the Court, with the assistance of the government's attorney, and the probation office.

It is also noteworthy that federal appellate courts have found that district courts may not delegate any authority to set a restitution payment schedule because the duty was a "core judicial function under the MVRA." *United States v. Prouty*, 303 F.3d 1249, 1254-55 (11th Cir. 2002)

(finding that the district court erred in delegating the repayment schedule to the probation office); *United States v. McGlothlin*, 249 F.3d 783, 785 (8th Cir. 2001) (reversing a district court's determination that the Bureau of Prisons collect restitution and set payment schedule); *United States v. Coates*, 178 F.3d 681, 685 (3d Cir. 1999) (holding that a "court abdicates its judicial responsibility when it permits a probation officer to determine the manner and schedule of restitution payments"). Although these cases deal primarily with a court's delegation of authority to other federal authorities, they apply here to the proposed delegation of authority to a private attorney who certainly has no affiliation with the federal government. Allowing Ford to fashion any sort of distribution or disbursement process would result in an improper delegation of this Court's authority under the MVRA. Further, ordering funds to first go through Ford, and then to the victims, would insert a middleman or custodial role that does not exist under the statute.

However, to the extent that Ford seeks to assist in the location and calculation of assets for restitution, her motion most likely falls under 18 U.S.C. § 3664(d)(6), for the appointment of a special master. In this capacity, Ford would be able to submit proposed findings of fact regarding any issue related to the restitution. Any such appointment would have to be approved by the parties and would generally follow the process for special master appointment in the civil context. *See* 18 U.S.C. § 3626(f). In addition, the Court would only order such an appointment if resolution of these issues became necessary. As it is written, the MVRA requires that the defendants provide the probation officer with a "complete listing of all assets owned or controlled by the defendant" and the attorney for the government is responsible for determining

the amount of loss to each victim. *Id*. at § 3664(d)(3), (e). Both of these provisions cover what Ford refers to as identification of assets and determination of the amounts owed to each victim. Only if issues arose as to these provisions would the consideration of a special master be appropriate, and even if such consideration occurred, it is unclear whether Ford would be a proper candidate if other parties object. The Court has no doubt that both Defendants here would strongly object to such appointment based on the animosity that has been demonstrated throughout this proceeding.

Finally, as Ford herself points out, her dual role as a trustee and attorney for the victims raises some ethical questions. The goals of a trustee (at least as envisioned in her motion) and the goals of a victims' advocate, have some overlap. However, they are not identical. Under the MVRA, a court is directed to determine the manner in which, and the schedule for, restitution payments based on: the financial resources and assets of the defendants, including whether any of these assets are jointly controlled; projected earnings and other income of the defendant; and any financial obligations of the defendant, including obligations to dependants. *Id*. at § 3664(f)(2). Thus, although the calculation of the actual restitution *amount* depends solely on the victims' losses, without any "consideration of the economic circumstances of the defendant," the manner in which the payments are actually made does depend on some of the defendant's financial background. A trustee in this case, therefore, have to have the Defendants' financial considerations in mind when going about the "management and distribution" of the restitution funds. Ford's position as the victims' attorney places her at odds with carrying out such a position. Although this conflict does not completely eviscerate the possibility that Ford would

be able to carry out the duties of a hypothetical trustee impartially, it is an important consideration worth noting.

Based on all of the factors outlined above, Ford's motion to be appointed trustee for the restitution funds simply has no foundation in the law. Above all, such an appointment would be an abdication of the Court's duties and obligations under the relevant statutes. Accordingly, it is hereby

**ORDERED** that the motion for the crime victims' advocate to be appointed trustee [Record No. 875] is **DENIED**.

This 19th day of August, 2009.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge