UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON
CRIMINAL ACTION NO. 07-39-DCR-JGW
CIVIL ACTION NO. 13-7325-DCR-JGW

**UNITED STATES OF AMERICA**                               **PLAINTIFF**

**V.**

**WILLIAM GALLION**                                          **DEFENDANT**

## REPORT AND RECOMMENDATION

Pending is defendant William Gallion's 28 U.S.C. §2255 motion to vacate or set aside his federal conviction and sentence. Doc. 1406. The United States has filed a response in opposition (doc. 1408) and defendant has filed a reply. Doc. 1418. The motion therefore is ripe for adjudication.

      **I.**       **Factual Background and Procedural History**

The parties are aware of the extremely lengthy history of this case. Accordingly, the Court will not burden the record with a detailed recitation of the underlying facts.[1] Instead, for purposes of this report and recommendation it is sufficient to quote the Sixth Circuit's opinion affirming this Court's final order of forfeiture:

> William Gallion, along with his partner Shirley Cunningham, was convicted of wire fraud after defrauding clients of tens of millions of dollars. *See United States v. Cunningham,* 679 F.3d 355, 362–71 (6th Cir.2012). The fraud conviction stemmed from a $200–million–dollar settlement that the attorneys negotiated on behalf of 431 clients who had been injured by the diet drug known as "fen-phen." *Id.* at 362–64. The Kentucky Bar Association began an investigation of the settlement in January 2002 and

---

[1] The factual history set forth in the Sixth Circuit's opinion affirming defendant Gallion's conviction (as well as his co-defendant, Shirley Cunningham) takes up seven pages in the Federal Reporter. *See United States v. Cunningham*, 679 F.3d 355, 363-370 (6th Cir. 2012). The Court's record of the case contains over 1,400 entries.

1

the two attorneys were eventually disbarred and then convicted in federal court.

*United States v. Gallion*, 534 Fed.Appx. 303, 304-05 (6th Cir. 2013).

Defendant was convicted by a jury in April 2009 (doc. 820) and sentenced to a total of three hundred months' imprisonment in August 2009. Doc. 971. The Sixth Circuit affirmed defendant's convictions and sentence in May 2012, and the Supreme Court denied defendant's petition for certiorari on December 3, 2012. *Gallion v. United States* 133 S.Ct. 772 (2012). With the aid of counsel, defendant filed the pending 28 U.S.C. §2255 motion exactly one year later. Doc. 1406.

**II.     Analysis**

**A.     Issues Raised**

Defendant presents two main issues, each of which contains multiple sub-issues. First, he contends his counsel was ineffective because counsel: 1) suffered from health problems which rendered him unable to perform at a constitutionally effective level; 2) failed to seek a continuance to retain an expert witness and failed to retain Kenneth Feinberg as an expert; 3) permitted defendant to testify; 4) failed to demand that a jury, not the Court, determine: a) an alleged factual dispute regarding the amount of the loss, b) defendant's obstruction and c) defendant's role in the offense; and 5) failed to petition the Kentucky Supreme Court to review the disciplinary files of Stanley Chesley, Joseph Bamberger and David Helmers. Second, defendant alleges that he was denied a fair trial because: 1) the United States suppressed investigatory materials it received from the Kentucky Bar Association ("KBA") which were favorable to defendant; and 2) Judge Reeves was biased against defendant and engaged in ex parte communications

with the KBA's office of bar counsel. Doc. 1406, p. 16-19.

      **B.**      **Ineffective Assistance of Counsel**

      **1.**      **Standard of Review**

In order to obtain relief under §2255, a petitioner must demonstrate that his sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law . . . ." 28 U.S.C. §2255(a). To be cognizable under §2255, an alleged constitutional error must be of such magnitude as to have "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

In order to demonstrate ineffective assistance of counsel, a petitioner must make two showings. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S.668, 687 (1984). A court need not address both prongs if a petitioner fails to make a sufficient showing on either prong. *See, e.g., United States v. DeGroat*, 102 Fed.Appx. 956, 959 (6th Cir. 2004). Finally, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689.

**2.     Counsel's Health**

The record shows that the Court recessed the trial multiple times due to health concerns of O. Hale Almand, Jr., defendant's counsel.  *See* Doc. 1165, at p. 8-10 (Court recessed trial for the day on March 2, 2009 due to Attorney Almand's dizziness); Doc. 1166 (Court recessed trial for two additional days beginning March 3, 2009 due to Attorney Almand's condition not having improved); Doc. 1167 (Court recessed trial from March 5, 2009 to March 9, 2009 after having spoken with Almand's doctor); Doc. 1002, p. 96-97 (Court recessed trial earlier than planned on March 16, 2009 due to Almand's health).  When Mr. Almand was again unable to participate in the trial on March 17, 2009, Judge Reeves appointed Willis Coffey to function as temporary standby counsel for defendant.  Doc. 1173, at p.4.  After consulting with defendant and Attorney Almand, Coffey asked the Court to continue the case for two days to permit Almand to recover and to give defendant "time also to reflect . . . and make his own independent decision on whether he still believes that counsel can proceed."  *Id.* at p. 9.  The Court granted Coffey's motion.  *Id.* at p.11.

On March 18, 2004, Almand informed the Court that he could not proceed that day but believed he could do so on the following Monday (March 23, 2009).  Doc. 1004, p. 4.  After noting that "Mr. Almand has provided very effective and very zealous advocacy on behalf of Mr. Gallion[,]" the Court asked Almand to provide a doctor's statement as to whether Almand could proceed with the trial in the next ten days.  *Id.* at p.8-9. The Court recessed the trial until the following Monday.  *Id.*at p. 18.  On that Monday, Almand announced that he was ready to proceed, defendant voiced no

objections, and the trial resumed without further health incidents. Doc. 1174, p. 3.

Defendant contends that it is "certainly clear from the record that Mr. Almand, Gallion's counsel, was not well and was suffering from health issues during the trial." Doc. 1406, p. 16. After reciting some of the delays occasioned by Almand's health, defendant generically argues that "[u]nder these circumstances, it was obvious that Mr. Almand was unable to provide effective assistance of counsel and should have considered the best interest of his client by seeking a mistrial." *Id.*

As the United States notes in its response, defendant's bare bones argument fails to demonstrate either deficient performance or prejudice.[2] The Court recessed the trial when Almand was unable to participate effectively, and defendant has not shown *any* specific actions counsel should have taken but did not (or vice-versa) due to illness. As the United States District Court for the Middle District of Florida has cogently noted, "[c]ourts have held that a defendant claiming his counsel rendered ineffective assistance due to a mental or physical illness, must point to specific errors or omissions which prejudiced his defense." *Crimi v. United States*, 2008 WL 2949518, at *2 (M.D.Fla. July 28, 2008) (collecting cases). Defendant's complete failure to show any specific errors or omissions stemming from Attorney Almand's health is fatal to this portion of his ineffective assistance of counsel claim. *Id.* (finding no ineffective

---

2 Defendant contends Almand's illness was of such magnitude as to constitute a constructive denial of counsel altogether, meaning that prejudice should be presumed. Doc. 1418, p.2. However, courts have rejected similar arguments. *See, e.g., Bellamy v. Cogdell*, 974 F.2d 302, 306-08 (2nd Cir. 1992) ("there is simply nothing inherent in an attorney's illness that necessarily will impede a spirited defense 'most of the time' to justify finding the attorney's representation *per se* ineffective. Rather, given the varying effects health problems can have on an individual's ability to function, claims of ineffective assistance based on attorney illness are best suited to the fact-specific prejudice inquiry mandated by *Strickland*."). Accordingly, the Court should analyze defendant's claims under the traditional *Strickland* standard.

assistance of counsel when a post-conviction petitioner generically argued that an attorney's illness made the attorney perform in an ineffective manner).[3]

### 3. Expert Witness

In its entirety, defendant's second ineffective assistance of counsel-based argument is as follows:

> When the trial court following a hearing entered an opinion and order (R. 774) denying Gallion's proposed expert Richard R. Robbins, Esq, from testifying, counsel for Gallion should have requested a continuance to obtain the services of an expert or the alternative sought the services of Mr. Kenneth R. Feinberg, Esq. who had executed an affidavit in *Abbot, et al. v. Chesley, et al*, Civil Action No. 05-CI-436, Boone Circuit Court, Commonwealth of Kentucky on January 13, 2006. Mr. Gallion was a party in the *Abbot* case and his counsel was fully aware that Mr. Feinberg could address important issues relating to interpretation of the settlement agreement and Ex. 3, attached to the settlement agreement as well as discussions which occurred at the mediation regarding the creation of a charitable trust (See Ex. A and Ex. A-I attached hereto.)
> The opinions set forth by Mr. Feinberg are clearly relevant to Mr. Gallion's intent and are contrary to the opinions set forth by the government's expert witness in his trial testimony.

Doc. 1406, p. 16-17.[4]

On direct appeal, defendant argued that the Court "violated [defendant's] Sixth Amendment rights to a jury trial, [defendant's] due process rights to present a defense, and the law-of-the-case doctrine when the court instructed the jury that the state-court settlement was 'an aggregate settlement of 440 claims' rather than a class-action

---

3 In defendant's direct appeal, the Sixth Circuit found "no error, plain or otherwise" when the trial court appointed interim counsel to represent defendant when Almand was ill and continued the case until Almand was able to return. *Cunningham*, 679 F.3d at 386.

4 In his reply brief, defendant devotes only one paragraph to this sub-argument, the majority of which is a reiteration that counsel should have obtained expert testimony as to whether the fen-phen settlement was a class or aggregate settlement. Doc. 1418, p. 3.

6

settlement."[5] *Cunningham*, 679 F.3d 355, 374. The Sixth Circuit rejected that claim, finding that the nature of the settlement was a mixed question of law and fact but because the nature of the settlement was not an element of the charged offenses, the trial Court had correctly concluded that the settlement was aggregate, meaning that "the district court's ruling was correct as a matter of law and did not invade the province of the jury or otherwise violate the defendants' constitutional rights." *Id.* at 376.

Nonetheless, defendant's basic argument is that counsel should have hired an expert, namely Kenneth Feinberg, to testify that the state court fen-phen settlement was a class action one. To support his argument, defendant attached to his §2255 motion an affidavit Feinberg made in 2006 in related state court litigation. Doc. 1406-1. The gist of the affidavit was Feinberg's assertion that the fen-phen settlement (which he repeatedly mistakenly refers to as the "Phen-fen" settlement) "was reasonable" and "generously compensated the 431 known Kentucky claimants and provided reasonable sums to address potential claims of additional Phen-fen patients . . . ." *Id.* at p.5. In other words, Feinberg's affidavit is contrary to the aggregate settlement conclusion reached by the trial court and the Sixth Circuit.

In addition, defendant has not shown with any degree of specificity how Feinberg's purportedly expert testimony would have had an effect on the outcome of the trial (i.e., defendant has not shown prejudice). Defendant contends Feinberg "could [have] address[ed] important issues relating to interpretation of the settlement

---

5  In defendant's previous trial, which ended in a mistrial, a different district judge had "assumed that the state-court action was settled as a class-action settlement . . . ." *Cunningham*, 679 F.3d at 376. The Sixth Circuit held that Judge Reeves finding in the retrial that the settlement was an aggregate one was "correct[.]" *Id.* at 377.

agreement . . . as well as discussions which occurred at the mediation regarding the creation of a charitable trust . . . ." Doc. 1406, p.16. Defendant's argument is fatally vague and conclusory as it does not specify what "important issues relating to the interpretation of the settlement agreement" Feinberg's expert testimony would have addressed. *See, e.g., United States v. Reid*, 2012 WL 1344985, at *2 (E.D.Ky. March 27, 2012) ("Conclusory statements are insufficient to warrant § 2255 relief."). Similarly, defendant does not specify what "discussions which occurred at the mediation" Feinberg's expert testimony would have addressed, or how that testimony would have had an effect on the outcome of the trial.[6]

Finally, defendant's argument is fatally flawed because, as the United States notes, Feinberg has "disavowed the opinion he expressed in the affidavit." Doc. 1408, p. 10. As the Kentucky Supreme Court explained in a 2013 opinion disbarring Stanley Chesley, defendant's co-counsel in the fen-phen matter, "Respondent hired Kenneth Feinberg, a nationally-recognized specialist in handling large aggregate case and class action settlements. At Respondent's behest, and based largely upon information provided by Gallion, Feinberg prepared an affidavit supporting the actions of the *Guard* case [i.e., the fen-phen state court action] counsel in the disbursement of the *Guard* case money. In this disciplinary proceeding, however, and after learning more of the details, Feinberg disavowed the opinion he expressed in the affidavit and withdrew his approval." *Kentucky Bar Ass'n v. Chesley*, 393 S.W.3d 584, 593 (Ky. 2013). Defendant is not entitled to relief on this claim.

---

6 The efficacy of Feinberg's erstwhile testimony about the mediation is rendered suspect in light of the

### 4. Defendant Testifying

In its entirety, defendant's argument is:

> Once the trial court made it clear that testimony regarding whether or not the settlement was an "aggregate" settlement and not a "class" action, Gallion had nothing to gain by testifying.
> There was a clear and obvious chance to his testimony causing substantial enhancements in his advisory guideline level. This, in fact, did happen. He received a two level enhancement for obstruction and four level enhancement for his role in the offense.

Doc. 1406, p. 17. Defendant expands very little on his argument in his reply brief, merely reiterating his contention that "[e]ffective counsel would have advised Gallion not to testify under the circumstances of this case." Doc. 1418, p.4.

"A defendant's right to testify at trial is a constitutional right of fundamental dimension . . . ." *Varney v. Booker*, 506 Fed.Appx. 362, 367 (6th Cir. 2012) (internal quotation marks and citation omitted). The right to testify "is personal to the defendant, who thus retains the ultimate decision whether to testify . . . ." *Id.* (internal quotation marks and citation omitted). In addition, "it is elementary that such a right [to testify on one's own behalf] does not extend to testifying *falsely*." *Nix v. Whiteside*, 475 U.S. 157, 173 (1986).

Defendant does not assert that counsel forced him (defendant) to testify against his will. Rather, the claim appears to be that counsel should somehow have prohibited defendant from testifying. Obviously, since the right to testify on one's own behalf is a fundamental, personal right counsel could not have prevented defendant from taking the stand. Defendant's argument that "it was ineffective assistance of counsel to permit

---

United States' assertion—which defendant did not rebut in his reply--that Feinberg "was not present at the mediation." Doc. 1408, p.9.

Mr. Gallion to testify" [doc. 1406, p. 17, emphasis omitted] is, therefore, clearly without merit. In addition, as the United States cogently notes in its response, defendant "makes no assertion of any facts to support this claim." Doc. 1408, p.12. In short, defendant is not entitled to relief.

### 5. Failure To Require the Jury To Make Determinations

Defendant contends counsel was ineffective "for failing to demand [that] a jury determine the factual dispute over the dollar amount of the alleged loss, obstruction and role in the offense." Doc. 1406, p. 17 (emphasis omitted). Defendant's terse argument does not contain a citation to any authority by which a defendant is entitled to have a jury make those sentencing determinations.[7]  *Id.*

A factor that increases an offense's statutory maximum and/or mandatory minimum sentence is an element of the offense which must be submitted to a jury. *Alleyne v. United States*, 133 S.Ct. 2151 (2013).[8]  However, "broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id.* at 2163.

Defendant has not shown how or why the three sentencing enhancements at issue found by Judge Reeves increased either defendant's statutory maximum or mandatory minimum sentence. The Sixth Circuit has approved a district court's usage of the preponderance of the evidence standard to make necessary conclusions in order to fashion a sentence within statutory limits. *See, e.g., United States v. Gates*, 461

---

7 Defendant's reply does not address this argument.
8 Because nothing in defendant's sentence triggers *Alleyne*'s holding regarding the requirement for a jury to determine facts which increase a defendant's mandatory minimum sentence, it is not necessary to determine if *Alleyne*, which was decided over four years after defendant's trial and nearly four years after

F.3d 703, 707-08 (6th Cir. 2006). Judge Reeves stated at sentencing that he was making his determinations using the preponderance of the evidence standard. Doc. 1179, p. 11. Accordingly, defendant's arguments are insufficient to merit relief.

### 6. Disciplinary Files

Defendant's final ineffective assistance of counsel-based argument is that counsel was ineffective "for failing to petition the Kentucky Supreme Court to permit inspection of the disciplinary files of Chesley, Helmers and Bamberger." Doc. 1406, p. 17 (emphasis omitted). Defendant then generically argues that "[a] substantial amount of impeachment information has been revealed in the publication of the disciplinary proceedings which were conducted by the Kentucky Bar Association. This information would have been extremely valuable in cross-examination of Chesley, Helmers and Bamberger." *Id.*

As the United States points out in its response, defendant's argument is fatally vague and conclusory in that defendant "utterly fails to disclose what this 'substantial amount' of information is and, more importantly, how it would have helped him." Doc. 1408, p. 13-14. Despite that clear warning, defendant's reply merely regurgitates the vague argument that "there was a substantial amount of impeachment information contained in the disciplinary proceedings which were being conducted by the Kentucky Bar Association which, with competent investigation by counsel, would have had a significant impact upon the credibility of Bamberger, Chesley and Helmers as witnesses." Doc. 1418, p. 4. Defendant bears the burden to "articulate sufficient facts

---

his sentencing, is applicable to this motion.

to state a viable claim for relief under 28 U.S.C. §2255." *Milburn v. United States*, 2013 WL 1120856, at *1 (E.D.Tenn. March 18, 2013). Because defendant has made only "vague conclusory statements without substantiating allegations of specific facts[,]" he has not met that burden and, consequently, he is not entitled to §2255 relief. *Id. See also United States v. Hawkins*, 2013 WL 1789854, at *2 (S.D.Ohio April 26, 2013) ("""To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. Relief under § 2255 is warranted only where a petitioner has shown a fundamental defect which inherently results in a complete miscarriage of justice. However, where a § 2255 motion contains only conclusional averments without factual material upon which to test the validity of [the] conclusions[,] such a motion can be dismissed without evidentiary hearing.") (internal quotation marks and citations omitted).

### C. Alleged Denial of Fair Trial

#### 1. KBA Materials

In only a very slight variation on the previously discussed ineffective assistance of counsel claim, defendant contends he was denied the right to receive a fair trial because "[t]he Government suppressed investigatory materials which it received from the Kentucky Bar Association which was [sic] favorable to [defendant] because it impeached several government witnesses." Doc. 1406, p. 18 (emphasis omitted). Defendant goes on to contend that the United States must have been having discussions with the KBA because the United States handed materials to defense

counsel pertaining to Chesley during a lunch break in defendant's trial. Extrapolating from that, defendant posits that "[t]his clearly indicates a representative of the KBA were [sic] sharing information with the Government" that "made it apparent to the government that the [KBA] may have information which was favorable to [defendant] for impeachment purposes and obligated the government to seek further information from the [KBA]." *Id.* In his reply, defendant more succinctly, but still vaguely, contends that "[a]ll this impeachable material was required to be made available to [defendant] and the failure to make it available denied [defendant] of his guaranteed right to due process." Doc. 1418, p.4-5 (internal quotation marks omitted).

Defendant's argument is fatally vague and conclusory. Defendant does not point out with specificity the information which the United States was required to provide.[9] Similarly, defendant does not specify how the alleged materials would have had an effect on the outcome of the trial.

Finally, defendant is essentially improperly relitigating an issue already decided in the United States' favor on direct appeal. Defendant contended on direct appeal that the trial court erred by precluding defendant's counsel from cross-examining witnesses related to KBA disciplinary proceedings against Bamberger, Chesley and Helmers. *Cunningham*, 679 F.3d at 384. The Sixth Circuit rejected that argument due to, among other things, the confidential nature of attorney disciplinary proceedings in Kentucky.

---

[9] Defendant only states that the "extent of impeaching information is clearly set forth in" the Kentucky Supreme Court's opinions disbarring Chesley, Helmers and Bamberger. Doc. 1406, p.18. *See Kentucky Bar Ass'n v. Chesley*, 393 S.W.3d 584-603 (Ky. 2013); *Kentucky Bar Ass'n v. Helmers*, 353 S.W.3d 599-603 (Ky. 2011); *Kentucky Bar Ass'n v. Bamberger*, 354 S.W.3d 576 (Ky. 2011). Obviously, referring generically to those opinions is inadequate to meet defendant's burden to specify which facts/investigatory materials should have been disclosed.

*Id.* Defendant may not relitigate the issue in §2255 proceedings. *See, e.g., Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) ("It is equally well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law.").

### 2. Judge Reeves' Alleged Bias

In a two-pronged sub-argument, defendant contends that "[t]he trial court was biased against [defendant] and it is believed engaged in ex parte communications with counsel for the Office of Bar Counsel (ORC) [sic] of the Kentucky Bar Association." Doc. 1406, p. 19 (emphasis omitted). Defendant contends the Court "continuously created an atmosphere of hostility and bias against [defendant] and his co-defendants" by "on several occasions threaten[ing] counsel with contempt" and "threaten[ing] contempt against [defendant's] son and . . . against a friend of [defendant] who had been attending the trial. In fact the Court banned this individual from attending any further proceedings . . . ." *Id.* With no supporting basis whatsoever, defendant then posits that those actions "may well have impacted the health of Mr. Almand." *Id.* Defendant then veers wildly to argue that a representative of the KBA attended the trial on two days which led to "there appear[ing] to be some question as to whether or not [the KBA representative] engaged in an ex parte communication with the Court . . . This was a matter of great concern to Mr. Almand and the motivating factor leading to his asking the Court whether or not a meeting occurred. The Court refused to answer the inquiry . . . creating an inference of bias toward [defendant]." *Id.*

14

Notably, defendant does not cite to a single authority to buttress his scattershot argument. Defendant offers no support whatsoever for his farfetched contention that Judge Reeves' actions or inactions somehow led to Attorney Almand's illness. Indeed, defendant does not even argue that the Court committed a cognizable error when it threatened to hold defense counsel and defendant's family in contempt and/or barred defendant's cousin from the courtroom.[10] Similarly, defendant makes a naked assertion that the trial court was engaged in ex parte conversations with the KBA and that those alleged conversations demonstrate the Court's bias against defendant.[11] In short, defendant's argument consists of conclusory statements and allegations lacking a sufficient legal or factual predicate.

In addition, each aspect of this multi-prong argument could have been raised on direct appeal, but was not. "It is well settled that an argument not raised on direct appeal is waived. Such an argument can be raised for the first time on collateral review only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Jones*, 178 F.3d at 796 (internal quotation marks and citation omitted). Defendant has not demonstrated a complete miscarriage of justice, nor has he explained why he failed to raise these claims on appeal. In short,

---

10 The record reflects that the trial court held counsel for co-defendant Cunningham in contempt for asking a witness a question which the Court had forbidden. *See* Doc. 1020, p. 3-5. The Court later withdrew the contempt order. Doc. 826. The Court expressed irritation with Attorney Almand and discussed holding Almand in contempt, but did not do so, when Almand violated the Court's order by showing a witness a document. Doc. 802, p. 20-21. The Court forcefully told Gallion's son that he would be held in contempt if he again orally expressed his disagreement with a ruling by the Court. Doc. 1161, p. 20-21. The Court banned defendant's cousin from the courtroom after the cousin, during a recess, referred to Judge Reeves as a "hanging judge" and expressed displeasure with an evidentiary ruling to a witness. Doc. 830, p. 3-8.

11 Defendant castigates the Court for failing to directly answer Almand's question regarding what contact the Court had with the KBA, but defendant cites to no authority by which the Court was required to answer

defendant has shown neither cause, prejudice nor actual innocence sufficient to excuse him from his unexplained failure to raise these claims in his direct appeal.

### III. Conclusion

For the foregoing reasons, defendant's §2255 motion [doc. 1406] should be **denied**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. *U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), aff'd, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

This the 7th day of April, 2014.



Signed By:
**J. Gregory Wehrman**
**United States Magistrate Judge**

---

the question.

16