UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 2: 07-39-DCR-01 |
| Plaintiff/Respondent, ) | and |
| ) | Civil Action No. 2: 13-07325-DCR-JGW |
| V. ) | |
| ) | |
| ) | |
| WILLIAM J. GALLION, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant William J. Gallion has moved the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 1406] In accordance with local practice, the matter was referred to a United States Magistrate Judge for review and issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

On April 7, 2014, United States Magistrate Judge J. Gregory Wehrman issued his report which recommended that Gallion's motion to vacate be denied. [Record No. 1419] Thereafter, Gallion – through Attorney H. Louis Sirkin - filed objections to the report. [Record No. 1422] Then, on April 23, 2014 (through Attorney Michael Dowling) Gallion moved to recuse the undersigned and to transfer the matter to the United States District Court for the Western District of Kentucky.[1] [Record No. 1427] Having fully considered the

---

[1] Counsel for Gallion disagreed regarding whether the motion to recuse should have been filed. [Record No. 1427, p. 1] The last-ditch attempt to by-pass the Court's habeas procedures was not well-taken.

record of this proceeding, including the portions of the Report and Recommendation to which Gallion objects, the Court agrees with the magistrate judge's analysis and conclusions. In addition, the Court finds Gallion's motion to recuse to be wholly without merit.[2] Gallion's motions will be denied and his objections will be overruled.

**I.**

In upholding Gallion's conviction, the Sixth Circuit briefly summarized the relevant facts as follows:

> Shirley Cunningham, Jr., and William Gallion were two of three Kentucky lawyers who represented several hundred Kentucky clients in a mass-tort action against the manufacturer of the defective drug "fen-phen." They settled the case for $200 million, which entitled them under their retainer agreements to approximately $22 million each in attorney fees. But rather than limit themselves to what they had contractually earned, Cunningham and Gallion concocted a fraudulent scheme to take from their clients almost twice that amount. The scheme did not work out as planned: Cunningham and Gallion were caught, subsequently disbarred from practicing law in Kentucky, and indicted on one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349.
>
> After a mistrial, a superseding indictment was issued that again charged Cunningham and Gallion with one count of conspiracy to commit wire fraud, but added eight counts that specifically detailed the wire communications that were part of the scheme. The two men were convicted on all counts at their second trial.

*United States v. Cunningham*, 679 F.3d 355, 363 (6th Cir. 2012).

On August 18, 2009, the Court entered Judgment against Gallion, sentencing him to a total of three-hundred months imprisonment, three years of supervised release, and ordering restitution. [Record No. 955] The Sixth Circuit affirmed Gallion's convictions and sentence,

---

[2] Although the United States has not responded to Gallion's motion to recuse, it addressed many of the arguments in other filings. [*See, e.g.*, Record No. 1429.]

*United States v. Cunningham*, 679 F.3d 355 (6th Cir. 2012), and the Supreme Court denied Gallion's petition for certiorari. *See Gallion v. United States*, 133 S. Ct. 772 (2012). Exactly one year later, Gallion filed his habeas petition pursuant to 28 U.S.C. § 2255.

Gallion's § 2255 petition consists of two overarching claims, with each having several components. First, he argues that his trial counsel, O. Hale Almand, Jr.[3], rendered ineffective assistance of counsel because Almand: (i) suffered from severe health conditions that prevented him from performing at a constitutionally effective level; (ii) did not seek a continuance to retain an expert witness and did not hire Kenneth Feinberg[4] as an expert witness; (iii) permitted Gallion to testify in his own defense; (iv) failed to demand that the jury determine the amount of loss and the defendant's role in the offense; and (v) failed to seek the Kentucky Bar Association's ("KBA") disciplinary files. Gallion alleges that he was denied a fair trial because the Government should have disclosed investigatory materials from the KBA, and because of the undersigned's supposed bias against him. He alleges that the Court engaged in improper *ex parte* communications. For these reasons, Gallion contends that his constitutional rights were violated, and that he should be afforded relief from his conviction and sentence. Magistrate Judge Wehrman rejected each of Gallion's arguments, recommending that the requested relief be denied. [Record No. 1419]

The Court reviews *de novo* those portions of the Report and Recommendation to which Gallion objects. *See* 28 U.S.C. § 636(b)(1)(C). Having examined the record and

---

[3] Almand passed away on July 6, 2013.

[4] Feinberg was, at that time, a recognized specialist in handling large aggregate cases and class action settlements. *See Ky. Bar Ass'n v. Chesley*, 393 S.W. 3d 584, 593 (Ky. 2013).

having made a *de novo* determination on all of the issues presented by Gallion, the Court agrees with the magistrate judge's recommendations. Additionally, Gallion has not shown that a Certificate of Appealability should issue.[5]

**II.**

[A] prisoner in custody . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. In seeking such relief, a prisoner may claim that the sentence was imposed in violation of the Constitution or federal law, that the court lacked jurisdiction to impose the sentence, that the sentence imposed was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. *Id*. "To prevail on a § 2255 motion alleging a constitutional error, the movant must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citations omitted). Additionally, "[t]o prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Id*. (citations omitted).

---

[5]A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the requisite "substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2), "a petitioner who has been denied relief in a district court 'must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.'" *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (emphasis and brackets in original) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). Gallion has not made a substantial showing of a denial of a constitutional right. Likewise, he has not demonstrated that the issues he now seeks to raise are debatable among jurists of reason or that the questions are adequate to deserve encouragement to proceed further.

**III.**

The Court first turns to Gallion's motion to recuse the undersigned which was filed after Magistrate Judge Wehrman's report and recommendation, on April 23, 2014. [Record No. 1427] The motion raises a melange of issues, and it is likewise meritless for a variety of reasons. First, the motion is untimely. Gallion argues matters that were not presented in his § 2255 petition, apparently seeking to either supplement his petition or file an entirely new habeas petition by couching it in terms of a motion to recuse and transfer. However, this motion was presented outside of the time allowed for habeas petitions.[6] *See* 28 U.S.C. 2255(f) (applying a one-year period of limitation to motions brought under this section). Perhaps more importantly, at least a portion of the motion presents claims that were not argued on direct appeal and are thus procedurally barred. *See United States v. Frady*, 456 U.S. 152, 168 (1982) (If a § 2255 petitioner could have raised a claim at trial or on direct appeal but did not, § 2255 relief on that claim is deemed procedurally defaulted).[7]

Despite these deficiencies, the Court will briefly address Gallion's lengthy arguments regarding the alleged bias of the undersigned. Judicial disqualification is required under 28 U.S.C. § 455(a) "in any proceeding in which [the Court's] impartiality might reasonably be questioned." Section 455(b)(1) further requires disqualification "[w]here [the judge] has a

---

[6] Gallion re-argues that an alleged *ex parte* meeting demonstrates judicial bias. Because this issue was raised in his habeas petition, the Court will address this argument in that context, not within the framework of judicial bias. Additionally, the Court will briefly address Gallion's arguments regarding the Government's supposed failure to disclose material evidence within the context of his habeas petition, to the extent it was timely raised and not procedurally defaulted.

[7] Gallion makes a half-hearted attempt to argue that the procedural default rule should not apply to him because he is "actually innocent" of the charges against him. [Record No. 1427, p. 2] Yet this argument completely ignores that the evidence of Gallion's guilt in this case was described by the Sixth

personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." The standard for judicial disqualification is set forth in *Liteky v. United States*, 510 U.S. 540 (1994):

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.

*Id*. at 555.

The Sixth Circuit has adopted the *Liteky* standard in judicial disqualification cases, and has cautioned that "[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988) (alteration in original) (citation omitted). In short, unnecessary recusals waste judicial resources. *City of Cleveland v. Krupansky*, 619 F.2d 576 (6th Cir. 1980).

In support of his claim of judicial bias, Gallion assails several of the Court's rulings, including the Court's determination that the settlement was an aggregate settlement; that the disbarment orders were admissible; and that evidence regarding pending disciplinary proceedings was not admissible on cross-examination. [*See* Record No. 1427.] But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. These rulings were "proper grounds for appeal, not for recusal." *Id*.

---

Circuit as "overwhelming." *Cunningham*, 679 F.3d at 384.

Gallion continues to assert that the Court's alleged bias manifested in its ruling precluding the defendants from cross-examining witnesses on any issues relating to ongoing KBA disciplinary investigations. Yet the Court so-ruled because disciplinary proceedings are confidential in Kentucky until there is a final determination that an ethical violation has occurred. *Cunningham*, 679 F.3d at 384 (*citing* Ky. Sup. Ct. R. 3.150(1)). The Sixth Circuit found this reasoning "sound" and upheld this Court's determination on that issue. *Id.* Similarly, the Sixth Circuit approved the Court's legal ruling regarding the aggregate settlement, calling it "correct as a matter of law," and ultimately affirmed the Court's rulings regarding the admissibility of the information contained in the disbarment decisions. *See id.* at 383-84. Gallion has failed to show that these "correct" and "sound" legal rulings of the Court are indicative of bias. *See Caravalho v. Pugh*, 177 F.3d 1177 (10th Cir. 1999) (A mere disagreement with the merits of a court's decision, which decision was clearly correct, does not support recusal of the judge). Because recusal is unnecessary and would be a waste of valuable judicial resources, the Court will deny Gallion's motions to recuse and transfer.

**IV.**

Gallion targets several portions of the magistrate judge's report and recommendation, contending that the magistrate judge erred in his consideration of his claims of ineffective assistance of counsel regarding: (i) his counsel's health, (ii) his failure to secure an expert witness, and (iii) counsel's failure to seek investigatory records relating to three material witnesses. [Record No. 1422, p. 2] Gallion further objects to the magistrate judge's rejection of his argument that his due process rights were violated because he did not receive

a fair trial due to alleged judicial bias and because of allegedly improper *ex parte* communications. [*Id.*]

   A.   **Ineffective Assistance of Counsel Claims**

When asserting a constitutional claim based on ineffective assistance of counsel, a defendant must prove both deficient performance and prejudice by a preponderance of the evidence. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To establish the first prong, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Under the second prong, a defendant is required to demonstrate that "but for" his counsel's errors, there is a reasonable probability that the result would have been different. *Id.* at 694.

In evaluating counsel's performance, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *accord United States v. Cavitt*, 550 F.3d 430, 400 (5th Cir. 2008). Counsel's deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

   i.   **Trial Counsel's Health**

Gallion objects to the magistrate judge's finding that his trial counsel, Mr. Almand, did not render ineffective assistance of counsel due to his medical conditions. Gallion now dubiously asserts that he was not aware of the extent of Mr. Almand's health condition. Yet, Mr. Almand's ailments during the trial are well-documented. During the defendants' first

trial (before United States District Judge William O. Bertelsman) Mr. Almand suffered a "vertigo attack" that resulted in the delay of the trial for several days. [Record No. 1408, p. 5] Even after this, Gallion opposed his counsel's request to withdraw due to scheduling conflicts during the second trial, instead moving to continue the trial for two weeks to accommodate counsel's schedule. [Record Nos. 694, 695]

During the trial before the undersigned, the Court accomodated Mr. Almand's medical conditions on several occasions. [Record No. 1165, p. 11; Record Nos. 1166, 1167; Record No. 1002, p. 97] In fact, on March 17, 2009, the Court appointed stand-by counsel Willis Coffey to consult with Gallion regarding the best manner of proceeding, in light of Mr. Almand's illness.[8] [Record No. 1173, p. 4] During that consultation, Mr. Almand was able to converse intelligently about the case and indicated a desire to proceed with his representation of Gallion. Mr. Coffey requested that the Court continue the matter for a couple of days to give Gallion time to determine how he would like to proceed.[9] [*Id.*, p. 8] The Court explicitly recognized the high level of professional assistance provided by Mr. Almand, in spite of his ailing health:

> THE COURT: To this point, Mr. Almand has provided very effective and very zealous advocacy on behalf of Mr. Gallion. I don't think anyone could argue to the contrary on that, sir.
>
> [THE UNITED STATES]: We do not certainly disagree with that.

---

[8] The Sixth Circuit found no error with the procedure employed by the Court. *Cunningham*, 679 F.3d at 385-86. The magistrate judge's report contains a typographical error, stating that the date was March 18, 2004, when in fact it was March 18, 2009. [Record No. 1419, p. 4]

[9] At that time, Gallion voiced his appreciation toward Mr. Coffey's participation and consultation. [*Id.*, p. 14]

> THE COURT: I want to make sure that he's able to do that as the case proceeds. I don't want Mr. Gallion to be prejudiced by a medical condition that obviously is not the choosing of Mr. Almand. It is what it is. We're faced with the situation that we're faced with.

[Record No. 1003, p. 7]

The Court determined that the immediate necessity was determining whether Mr. Almand was able to proceed "over the next ten days in representing Gallion and do so in an effective and zealous manner – not overly zealous, but in a zealous manner that's expected of all attorneys." [*Id.*, pp. 8-9] Thus, the Court requested a medical opinion from Mr. Almand's doctor on that issue so that this determination could be made. When trial began the next Monday, Mr. Coffey announced to the Court that Mr. Almand was able to proceed. [Record No. 1174, p. 2]

The record establishes that Gallion was aware of Mr. Almand's health problems but preferred that Almand continue as his attorney. The Court thoroughly considered Mr. Almand's advocacy and granted several continuances to ensure that Almand could effectively represent Gallion. When appointed for this very purpose, Coffey agreed that Almand could competently represent Gallion. In short, Gallion has not shown that his counsel's performance was deficient because of his health condition. *See Crimi v. United States*, 2008 WL 2949519 (M.D. Fla. July 28, 2008) (noting that courts require a defendant claiming ineffective assistance due to counsel's mental or physical illness to point to specific errors or omissions that prejudiced the defendant).

Yet, even assuming that Almand's representation fell below the standard of reasonableness, Gallion has not satisfied the second prong of *Strickland*, that he suffered any

-10-

prejudice as a result of Almand's allegedly deficient performance. *See* 466 U.S. at 694. Recognizing this defect, Gallion contends that prejudice should be presumed, following the Supreme Court's reasoning in *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Supreme Court held that there may be rare circumstances where prejudice may be presumed, such as where counsel is completely denied at a critical stage, or if counsel were to fail to subject the prosecution's case to meaningful adversarial testing, or where counsel is placed in circumstances in which even a competent attorney very likely could not render assistance. *See id.* This case presents none of those exceptional circumstances.

As noted above, Almand zealously advocated on Gallion's behalf. Mr. Almand had months to prepare Gallion's defense. And when necessary, the Court granted continuances to allow him to recover. Gallion had the benefit of counsel at all critical stages, and Almand in no way failed to subject the Government's case to meaningful adversarial testing. *See Muntaser v. Bradshaw*, 429 F. App'x 515, 523 (N.D. Ohio 2009) (stating that "actively participating in presenting witnesses and cross-examining the Government's witnesses" constitutes a meaningful adversarial testing of the Government's case). Almand vigorously cross-examined the Government's witnesses and zealously advocated on behalf of Gallion. *See Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007) (holding that attorney who allegedly abused alcohol and drugs but was conscious, cross-examined witnesses, and made a coherent closing statement was not constructively absent such that prejudice could be presumed). Accordingly, the Court finds no error with the magistrate judge's finding that Almand was not ineffective because of his health condition, and the Court rejects Gallion's newly-raised argument that prejudice should be presumed. Gallion's first objection will be overruled.

### ii. Failure to Present an Expert

Gallion argues that Almand's failure to present an expert was objectively deficient and prejudicial, and that the magistrate judge's analysis on this point is erroneous. [Record No. 1422, p. 4] He continues to assert that his trial counsel should have retained Kenneth Feinberg – the attorney who initially submitted an affidavit condoning the defendants' handling of the settlement money – as an expert in this matter. This objection is a naked attempt to re-hash arguments already made and rejected by this Court and the Sixth Circuit on Gallion's direct appeal.

The Sixth Circuit specifically considered the Court's ruling that the state-court settlement was an aggregate settlement, finding it "correct as a matter of law" and that it did not run afoul of any of the defendants' constitutional rights. *Cunningham*, 679 F.3d at 376. The Sixth Circuit re-iterated its support of this Court's determination as "the correct one." *Id.* at 377. Thus, there was no reason to proffer expert testimony on an issue that had been determined as a matter of law. *See id.* at 380 ("[The expert's] proposed testimony was rooted in the belief that the state-court lawsuit was settled as a 'quasi-class action.' That belief was in direct conflict with the district court's legal conclusion that the case was settled as an aggregate settlement, and thus [the expert's] opinion relating to class actions – including how they are usually settled, the frequency of *cy pres* distributions in class action settlements, and the rights of class members – would have been irrelevant and confusing to the jury.").

Notably, Mr. Feinberg's initial affidavit was based largely on self-serving information provided by Gallion. *Chesley*, 393 S.W.3d at 593. Gallion conveniently fails to acknowledge that Feinberg disavowed his earlier opinion once he was apprised of more

-12-

details surrounding the defendants' actions. *See Ky. Bar Ass'n v. Chesley*, 393 S.W.3d 584, 593 (Ky. 2013). Thus, Gallion's argument fails under both prongs of *Strickland*. He cannot show that counsel was deficient by failing to call an expert witness on an issue that was no longer before the jury. *See Cunningham*, 679 F.3d at 380 (noting that such an expert would be "irrelevant and confusing to the jury.") But even if Gallion could show that counsel's performance was deficient, he is unable to show that he was prejudiced by counsel's failure to retain an expert such as Feinberg. Feinberg's testimony would not have been helpful to Gallion; rather, it is highly likely that Feinberg's testimony would have harmed Gallion's case after he had been fully apprised of the circumstances surrounding the settlement. In short, there is no reasonable probability that, but for the decision not to call an expert such as Mr. Feinberg, the outcome of Gallion's trial would have been different. Gallion's second objection will be overruled.

### iii. Failure to Seek KBA Disciplinary Files

Gallion also argues that his counsel was ineffective for failing to seek the disciplinary files of Joseph Bamberger, David Helmers, and Stanley Chesley - the other attorneys involved in the underlying fen-phen litigation. [Record No. 1422, p. 4] He specifically contends that his counsel's failure to seek the disciplinary files of Chesley would have provided helpful impeachment evidence regarding Chesley's testimony during his trial.

In his objections, Gallion latches on to Chesley's argument to the Supreme Court of Kentucky that the case was settled as a class action as information upon which Chesley could have been impeached. *Chesley*, 393 S.W.3d at 595. Chesley's argument to the Supreme Court of Kentucky is actually consistent with Chesley's testimony during the trial. [*See*

Record No. 1162, p. 22 ("I [Chesley] feel that it was settled as a class action.").] Moreover, the record indicates that Chesley was vigorously cross-examined regarding his prior testimony in several proceedings. [*See* Record No. 789, p. 3.] There is nothing to support the contention that a substantial amount of impeachment information was revealed once the disciplinary proceeding opinions were published. Rather, the Court agrees with the Government that most, if not all, of the information revealed in those opinions was introduced in some form during the trial. [*See* Record No. 1408, p. 14.]

Gallion has not shown that there is a reasonable probability that the KBA disciplinary files, even if they were available and not privileged, would have made any difference in the outcome of his trial. His ineffective assistance of counsel claim regarding the KBA disciplinary files fails.

### B.  Due Process Claims

Gallion also attacks Magistrate Judge Wehrman's conclusion that he was not denied a fair trial in violation of his constitutional rights. To prevail on this constitutional claim, Gallion must demonstrate a constitutional error that was of such a magnitude that it had a substantial and injurious effect or influence on the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Gallion would be entitled to relief only by showing "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

### i. Alleged Withholding of KBA Evidence

Gallion argues that the Government withheld information that could have been used to impeach certain witnesses, speculating that the United States must have been receiving information from the Office of Bar Counsel of the KBA. This argument is an iteration of the argument that trial counsel was ineffective for failing to seek the KBA disciplinary files, yet Gallion now seeks to blame other sources, including the Court and the United States, for this alleged unfairness. He ignores the fact that this argument was rejected by the Sixth Circuit in his direct appeal, rendering it inappropriate in this forum. *See Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (Holding that a § 2255 petition may not be used to re-litigate a claim raised and considered on direct appeal absent highly exceptional circumstances such as an intervening change in the law).

As noted above, Gallion has not identified exactly what information was revealed to him upon the publication of the KBA disciplinary opinions of Bamberger, Chesley, and Helmers that could have been used to impeach witnesses during his trial. *See Chesley*, 393 S.W. 3d at 584-603, *Ky. Bar Ass'n v. Helmers*, 353 S.W.3d 599 (Ky. 2011), and *Ky. Bar Ass'n v. Bamberger*, 354 S.W. 3d 576 (Ky. 2011). Nor is there any support for the inference that the Government had information that should have been disclosed to him. Gallion attempts to cast a shadow upon the United States' receipt of a redacted document from a representative of the KBA on February 25, 2009. [Record No. 1019] However, that document was disclosed to the defendants on that same day. [*Id.*, p. 3] The United States has consistently maintained that it was not familiar with the document and had no part in

redacting that document. [*Id*.] The logical inference is that the KBA redacted the document because, as noted by the Sixth Circuit, the disciplinary proceedings were not final and were thus confidential. *Cunningham*, 679 F.3d at 384.

Moreover, the Government submits that it was never "provided with any other witness statements, impeaching, or exculpatory material by the KBA." [Record No. 1408, p. 16] Nor does the fact that the Government received information from the KBA regarding the *defendants* show that the KBA provided information regarding any *witness*. [*See id*.] The United States moved the Supreme Court of Kentucky, on behalf of federal law enforcement, for the release of documents it had gathered only for Defendants Gallion, Mills, and Cunningham. [Record No. 1406-3] This did not relate to any witness, including Chesley. [*See id*.] In short, there is simply no support – aside from Gallion's conjecture – that the KBA provided the Government with information regarding Chesley or any other witness. The record indicates that the opposite is true. There is no need to return the matter to the magistrate judge to permit discovery because the record is clear on this point. Accordingly, this objection will be overruled.

### ii. Claims of Judicial Bias

The Court now turns to Gallion's claims of judicial bias. Gallion asserts that his constitutional rights were violated due to a variety of the Court's rulings during his trial. Because none of these claims were raised on direct appeal, they are procedurally barred. *See Frady*, 456 U.S. at 168 (If a § 2255 petitioner could have raised a claim at trial or on direct appeal but did not, § 2255 relief on that claim is deemed procedurally defaulted). Gallion

offers no explanation regarding why he did not raise these grounds on direct appeal, and there is no "complete miscarriage of justice" that would excuse this deficiency. *See id.*

Even if these claims were not barred, they are otherwise meritless. The Court's rulings during the course of the trial were firmly rooted in the law and in the Court's power to "impose silence, respect, and "decorum" and "submission to [the Court's] lawful mandates." *Anderson v. Dunn*, 19 U.S. 204, 6 Wheat. 204, 227 (1821); *see also* 18 U.S.C. § 401. And Gallion's claims of improper *ex parte* communications between the Court and various parties are specious and warrant no further discussion. As a result, Gallion's final objection fails.

## V.

Gallion has not demonstrated that he is entitled to collateral relief under 28 U.S.C. § 2255. Likewise, he has not shown that this Court should issue a Certificate of Appealability on any claim. Accordingly, it is hereby

**ORDERED** as follows:

1) Defendant William J. Gallion's Motion for Recusal and Motion to Transfer [Record No. 1427] is **DENIED**.

2) The Report and Recommendation of Magistrate Judge J. Gregory Wehrman [Record No. 1419] is **ADOPTED** and **INCORPORATED** by reference.

3) Defendant Gallion's objections to the Report and Recommendation [Record No. 1422] are **OVERRULED**.

4) Defendant Gallion's motion to vacate, set aside, or correct his sentence [Record No. 1406] is **DENIED** and this matter is **DISMISSED** from the Court's docket. A separate Judgment shall issue this date.

5) A Certificate of Appealability shall not issue.

This 27th day of May, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge